ELKINS V. WATERFALL COMMUNITY

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**MELVIN A. ELKINS, JR. and WANDA L. ELKINS,**
**Plaintiffs-Appellants,**
**v.**
**WATERFALL COMMUNITY WATER USERS ASSOCIATION,**
**Defendant-Appellee.**

Docket No. A-1-CA-33634
COURT OF APPEALS OF NEW MEXICO
May 21, 2019

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY, James Waylon Counts, District Judge

**COUNSEL**

Cuddy & McCarthy, LLP, Rebecca Dempsey, Santa Fe, NM, Holt Babington Mynatt Martinez P.C., David McNeill, Jr., Las Cruces, NM for Appellants

Sheehan & Sheehan, P.A., Joshua A. Allison, Quentin Smith, Albuquerque, NM for Appellee.

**JUDGES**

M. MONICA ZAMORA, Chief Judge. WE CONCUR: KRISTINA BOGARDUS, Judge, LINDA M. VANZI, Judge, concurs in result only.

**AUTHOR:** M. MONICA ZAMORA

**MEMORANDUM OPINION**

**M. ZAMORA, Chief Judge.**

**{1}** Plaintiffs Melvin A. Elkins, Jr. (Elkins, individually) and Wanda L. Elkins (Plaintiffs, collectively)[1] appeal an order of the district court denying their motion for summary

_____

[1]For purposes of the binding effect of previous contracts, agreements, and orders that Elkins has individually entered, it is immaterial that Mrs. Elkins joined this particular case as both she and Elkins appear on the quitclaim deeds, Elkins is also a party, and Elkins and Mrs. Elkins are in privity. *See Boyd Estate ex rel. Boyd v. United States*,

judgment; granting partial summary judgment in favor of Waterfall Community Water Users Association (Defendant); and declaring Defendant and its property owners as having ownership in certain water rights and a water delivery system held in a constructive trust. Plaintiffs also appeal the district court's damages award to Defendant for services including use of the water delivery system, which delivered water to Plaintiffs' properties. We affirm.

**BACKGROUND**

**{2}** This case is the latest in a decades-long series of disputes involving water rights from a surface water source, now known as the Culbertson Springs, located in the Waterfall Subdivisions and Waterfall East Subdivisions (collectively, Waterfall subdivisions) in Otero County, New Mexico. Because of the complexity of the historical, factual, and procedural backgrounds, we explain the background in greater detail than we ordinarily would for a memorandum opinion.

**{3}** The district court based its summary judgment decision on the following facts,[2] which it accepted as undisputed and ruled accordingly. The water rights at issue were adjudicated and awarded to Ysleta College Corp. on April 30, 1945 (Ysleta Decree). *See Bass v. Ysleta College Corp.*, Otero County Cause No. 4116 (1945). The court in *Ysleta College* decreed that the "rights of said YSLETA COLLEGE in and to said Culbertson Spring[s] and to the use of the water thereof are and forever hereafter shall be appurtenant to and non-severable from the hereinabove described land now owned by it[.]" That area of land owned by Ysleta College, together with all appurtenant rights, came to be known as the "Waterfall." After a series of conveyances, on May 31, 1971, Waterfall, Inc. acquired the Waterfall, "including water rights and all water rights in and to the Culbertson Spring[s]." From 1971 to 1973, Waterfall, Inc. recorded plats for the Waterfall subdivisions.

**{4}** On June 21, 1976, Waterfall, Inc.[3] by sole shareholder Ira Rupp conveyed the Waterfall subdivisions to Caidas Del Agua, Inc. (Caidas Del Agua) "together with all

---

2015-NMCA-018, ¶ 25, 344 P.3d 1013 ("Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same." (internal quotation marks and citation omitted)).

[2]We note that the district court's minute order after the hearing on the cross motions for summary judgment purports to reflect the court's "findings." We caution the district court on its wording in the future as findings within the context of a motion for summary judgment are procedurally inappropriate. *See Summers v. Am. Reliable Ins. Co.*, 1973-NMSC-060, ¶ 10, 85 N.M. 224, 511 P.2d 550 ("Resolution of disputed questions of material fact is improper in summary judgment proceedings, whether by findings of fact or otherwise."). Summary judgment "is not used to decide an issue of fact, but, rather, to determine whether one exists," and it "is not to be used as a substitute for a trial on the merits." *Pharmaseal Labs., Inc. v. Goffe*, 1977-NMSC-071, ¶ 27, 90 N.M. 753, 568 P.2d 589. There is no impact here given the district court's conclusion that there were no genuine disputes of material fact and Plaintiffs' statement that they do not dispute the "findings" in the Minute Order.
[3]It appears from the record that Waterfall, Inc. provided the water service to the Waterfall subdivisions lot owners at that time; however, the first time the WDS appears by name in the record is in the 1991 Settlement Agreement referencing a transfer of ownership to Caidas Del Agua in 1976.

water rights appurtenant thereto, and the rights to all springs located upon, or presently being utilized by or upon the properties conveyed [t]hereby, together with all such rights and springs which Grantor might have or claim on lands in the immediate vicinity of the lands conveyed [t]hereby." On July 25, 1976, Caidas Del Agua mortgaged the same interest in the Waterfall subdivisions to the Bank of Santa Fe.[4] On August 15, 1978, Caidas Del Agua mortgaged the same interest in the Waterfall subdivisions to Consumer Credit Corporation (CCC). Caidas Del Agua operated the Waterfall Water Distribution System (the WDS) for the benefit of the Waterfall subdivisions property owners, until it defaulted on CCC's mortgage in 1979. CCC foreclosed on the mortgage, and received two Special Master's deeds to the property listing the remaining lots in the Waterfall subdivisions "together with all tenements and appurtenances thereto belonging[.]"

**{5}**     The district court concluded as a matter of law that it was at this juncture that the WDS was abandoned to the property owners and was held in a constructive trust for the property owners. After Caidas Del Agua went out of business, the Waterfall subdivisions lot owners formed the Waterfall Property Owners' Association, Inc. (WPOA) to operate the WDS. WPOA eventually "ceased to exist due to non-activity." Since 1999, Defendant, a public entity, has operated the WDS and controlled the water rights as successor trustee to WPOA.

**{6}**     On March 17, 1992, CCC deeded nineteen Waterfall subdivisions lots, "subject to the usual exceptions, easements, restrictions and reservations of record, together with all their appurtenances," to Plaintiffs (1992 Purchase). Then, on May 25, 2005, CCC quitclaimed to Plaintiffs "all rights, and interest to the tenements and appurtenances" it owned under the Special Master's deed. Plaintiffs do not challenge the district court's "findings of fact" on appeal.

**{7}**     Plaintiffs initiated the current lawsuit against Defendant in the district court in 2007, after acquisition of the 2005 quitclaim deed from CCC. Plaintiffs' complaint asserts six claims for relief. Count I sought a declaration that Plaintiffs are owners of "the Culbertson Spring[s] water rights and the [WDS to] resolve the question of ownership thereof left open by the 1991 [Agreement] . . . [and] declare WPOA's [2000] Special Warranty Deed void." Count II sought dissolution of the constructive trust because Plaintiffs' "ownership of the Culbertson Spring[s] water rights and the [WDS] eliminate the need for the implied constructive trust created by the 1991 [Stipulated Agreement]." Count III sought injunctive relief against Defendant, as successor to WPOA, and asked the district court to enjoin Defendant: (1) to withdraw its claim of ownership of water rights filed with the Office of State Engineer on November 11, 1980; (2) from using "the January 5, 1990, Ira Rupp quitclaim deed and affidavit as evidence of its claimed ownership" because the 1991 Stipulated Agreement declared it null and void; (3) from demanding that any lot "owner be required to join the Association as a condition to receiving or continuing to receive water service"; (4) "from refusing or threatening to refuse water service or water connections to any property owner"; (5) "to prepare and file with the Otero County Clerk withdrawals of any and all purported

---

[4]It appears from the record that the mortgage with Bank of Santa Fe was released on July 26, 1976.

conveyances, easements or water rights as [directed by] the 1991 [j]udgment"; (6) "from taking any action that may or will interfere with [Plaintiff]s' peaceful use or alienation of their properties"; and (7) "from using the [2000] WPOA Special Warranty Deed as evidence of or in support of any claim of ownership interest in the . . . water rights or the [WDS]." Count IV sought damages for conversion alleging Defendant took water from Culbertson Springs and used the WDS without payment to Plaintiffs. Count V alleged a claim and sought damages for slander of title resulting from Defendant's publishing notice that it would not provide water service to new lot purchasers due to the water being fully committed to the current owners, which caused real estate brokers to refuse to purchase Plaintiffs' lots. Finally, Count VI raised a claim and sought damages for interference with prospective sale of real property resulting from the same notice referenced in Count V.

**{8}** The district court resolved Plaintiffs' claims on the parties' cross motions for summary judgment.[5] Following a hearing, the district court entered judgment in favor of Defendant "as to all issues, except the issues raised by [Defendant's] counter[]claims," and ordered that the parties proceed to trial on Defendant's counterclaims. Plaintiffs appealed this ruling, arguing that the issue of whether separate ownership of water rights and the real estate to which those rights are beneficially applied constitute a "severance" under state law was "determinative of all other claims." *See Elkins v. Waterfall Cmty. Water Users Ass'n* (*Elkins II*), No. 30,683, mem. op. at *1 (N.M. Ct. App. Mar. 29, 2011)[6] (non-precedential). We declined to consider the merits because Defendant's counterclaims remained outstanding and the order was "not sufficiently final for purposes of appeal." *Id.* at *3.

**{9}** Defendant asserted two counterclaims against Plaintiffs: (1) "costs and charges for the operation of [the WDS]" owed to Defendant in the amount of $8,830.65 for water delivery service to Plaintiffs' properties since 1989; and (2) "slander of title and interference with business relationships" due to Plaintiffs' interference with Defendant's receipt and utilization of public grants from the Legislature for improvements to the WDS. After a trial on the merits, the district court determined that the water rights are appurtenant to and non-severable from each parcel of the Waterfall subdivisions; that the water rights are held in trust by Defendant; and that the WDS, abandoned by Caidas Del Agua to the Waterfall subdivisions property owners, is likewise held in trust by Defendant for the property owners. The district court entered a final judgment awarding Defendant the cost of delivering water to Plaintiffs' properties in the amount of $6,841.38 plus 15 percent interest, dismissing with prejudice Plaintiffs' complaint,

---

5Although Plaintiffs argued in their motion for summary judgment that they "are entitled to judgment as a matter of law on all issues raised in the [c]omplaint and [c]ounterclaim," neither party argued the merits of their claims in Count V for "slander of title" and Count VI for "interference with prospective sale of property."

6Although the district court in this matter found that Defendant "has been since 1999 successor trustee to WPOA . . . and was so recognized in Otero County district cause CV 2001-520 by [o]rder entered August 27, 2003, which was appealed by Elkins and which [o]rder was affirmed by the N[.]M[.] Court of Appeals on July 18, 2006," we do not find a memorandum opinion issued by our court on that date. We assume the district court meant to refer to our *February 8, 2008*, memorandum opinion in cause No. 26,767 wherein we affirmed "the district court's findings of fact and conclusions of law and the district court's March 29, 2006 judgment," corresponding to the August 27, 2003, minute order entered in CV-2001-520.

dismissing with prejudice Defendant's second counterclaim for tortious interference with contract, and dismissing with prejudice Plaintiffs' claim that they were subject to an unconstitutional taking of water. Plaintiffs appeal the grant of partial summary judgment in Defendant's favor (Counts I, II, III, and IV); dismissal of the complaint with prejudice (Counts V and VI); and final judgment in Defendant's favor (Counterclaim I). We reserve discussion of additional pertinent facts and procedure for our analysis.

**DISCUSSION**

**I.    The District Court Did Not Err as a Matter of Law in Granting Partial Summary Judgment in Favor of Defendant**

**{10}**    We begin by first addressing Plaintiffs' claim that the district court erred in denying their motion for summary judgment and dismissing their complaint with prejudice in the final order. Because Plaintiffs do not contend that any facts are disputed, but rather challenge the district court's "incorrect legal interpretation of the Ysleta Decree" and "incorrect application of the law regarding severance of [the] appurtenant irrigation rights from the land to the facts of this case," this argument is reviewable. *See Green v. Gen. Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 19, 106 N.M. 523, 746 P.2d 152 (holding that "denial of a motion for summary judgment is not reviewable after final judgment on the merits[, and i]f a summary judgment motion is improperly denied, the error is not reversible for the result becomes merged in the subsequent trial"); *Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶¶ 7-12, 123 N.M. 362, 940 P.2d 468 (stating that a narrow exception to the general rule stated in *Green* applies to permit post-trial appeal of denial of summary judgment, but only if "(1) the facts are not in dispute[;] (2) the only basis of the ruling is a matter of law which does not depend to any degree on facts to be addressed at trial[;] (3) there is a denial of the motion[;] and (4) there is an entry of a final judgment with an appeal therefrom").

**{11}**    "The application of the law to the undisputed facts is a legal conclusion that we review de novo." *Sabatini v. Roybal*, 2011-NMCA-086, ¶ 16, 150 N.M. 478, 261 P.3d 1110. "Upon the movant making a prima facie showing [that he or she is entitled to summary judgment], the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Bank of New York Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "Where an issue to be determined rests upon the interpretation of documentary evidence, an appellate court is in as good a position as the trial court to determine the facts and draw its own conclusions." *Maestas v. Martinez*, 1988-NMCA-020, ¶ 15, 107 N.M. 91, 752 P.2d 1107.

**A.    Declaratory Relief and Plaintiffs' Claimed Ownership of Water Rights and the WDS**

**{12}**    The record demonstrates that in 1991, Elkins sued WPOA alleging failure to comply with the 1990 Settlement, (resolving a prior lawsuit which we discuss in greater detail below) and for creating a hazardous area on his property. *See Elkins v. Waterfall*

*Prop. Owners, Inc.*, Otero County Cause No. CV-91-26. WPOA responded by suing all of the Waterfall subdivisions property owners to quiet title in the WDS. *See Waterfall Prop. Owners Ass'n v. Big Am. Co.*, Otero County Cause No. CV-91-47 (1991). The district court consolidated the lawsuits and the parties entered into a stipulated agreement, resolving three lawsuits (1991 Agreement): CV-88-355,[7] CV-91-26, and CV-91-47. The district court incorporated the 1991 Agreement into an order signed by two district court judges and filed with the court. The parties agreed that "[o]n the date of the final Order of the Special Master's Deed, Caidas [D]el Agua notified[8] the water users in [the Waterfall subdivisions], in writing, that it no longer owned an interest in the [Waterfall subdivisions] . . . and, therefore, water and gas service would no longer be furnished by Caidas [D]el Agua." The parties further agreed that "[n]o water collection, storage, and distribution system was ever set out, described and recorded, as required by law, by the original developer or Caidas [D]el Agua, and no conveyance to the water collection, storage, or distribution system was ever recorded from Caidas [D]el Agua to any subsequent entity." As such, the 1991 Agreement ordered "that [WPOA would] operate and manage the water rights, easements, and [the WDS] as Trustee under a constructive trust."

**{13}** Then, after a trial on the merits in a 2001 lawsuit, the district court found that Defendant had been operating the WDS as successor trustee to WPOA and concluded that Defendant was the sole operator and in control of the WDS. *See Waterfall Cmty Water Users Ass'n v. Elkins*, Otero County Cause No. D-1215-CV-2001-520 (Mar. 29, 2006). This Court affirmed. *See Elkins v. Waterfall Subdivision Water Users Ass'n*, (*Elkins I*), No. 26,767, mem. op. at 13 (N.M. Ct. App. Feb. 8, 2008) (non-precedential) (affirming "the district court's findings of fact and conclusions of law and the district court's March 29, 2006 judgment").

**{14}** In the present action, the district court concluded, based on the undisputed facts and as a matter of law, the following: (1) "none of [Plaintiffs'] predecessors in title severed the water rights from the lands to which the rights were appurtenant" and (2) "[a]ny attempt to sever the rights from the land was contrary to [the Ysleta Decree] and New Mexico law, and thus was ineffective in creating a severance." The court reasoned that because "[a] grantee cannot get better title or rights than the grantor had[,]" the "[a]ppurtenant water rights transferred to the new owners of the dominate estate as the property changed hands." Finally, the court concluded that "[t]here [was] no genuine issue of material fact that, as between Plaintiffs and Defendant, Plaintiffs own, at most, water rights appurtenant to the lots in Waterfall currently owned by Plaintiffs." The district court ordered that the appurtenant water rights and the WDS abandoned to the

---

7In 1988, WPOA filed a lawsuit against Elkins claiming ownership and operation of the WDS since 1980, and alleging that it had assumed road maintenance responsibilities since early 1988. This lawsuit is discussed in further detail at paragraph 33.

8The parties do not dispute that the Caidas Del Agua notice stated specifically: "These [gas, water, and other] services were provided previously as an accommodation only, and not because of any legal requirement. We advise that you either organize a Utility Association, or that you make arrangements to personally provide yourself with gas, water and road maintenance."

property owners were held in trust for the Waterfall subdivisions property owners by Defendant.

**{15}** Plaintiffs argue that they have record title to the water rights and the WDS through a chain of recorded deeds, dating back to the Ysleta Decree. Plaintiffs argue that Waterfall, Inc. expressly retained the water rights in the deeds to individual lot owners, and, thus, the water rights did not pass to the Waterfall subdivisions lot owners. In support of this contention, Plaintiffs argue on appeal that at the time it platted the lots, Waterfall, Inc. submitted a "Property Report Notice and Disclaimer to the Office of Interstate Land Sales Registration for the U[nited] S[tates] Department of Housing and Urban Development" expressly stating that purchases of the lots would not be free of restriction, including: "That all oil, gas, mineral and water rights are retained by Waterfall, Inc." Plaintiffs argue that this separation of water rights from ownership of appurtenant land is permitted under New Mexico law and in accordance with the Ysleta Decree. Plaintiffs purport that Waterfall, Inc. then conveyed the retained collective water rights to Caidas Del Agua, who lost them to CCC in the foreclosure action. Plaintiffs argue that they subsequently acquired the collective water rights and the WDS in the 1984 and 1992 Purchases from CCC, and 2005 and 2008 Quitclaim Deeds from CCC. [9] Finally, Plaintiffs argue that the district court erred as a matter of law in concluding that Caidas Del Agua abandoned the WDS to the Waterfall subdivisions property owners because Caidas Del Agua did not have an ownership interest to abandon; rather, its interest in the WDS was conveyed to CCC in the Special Master's Deeds.

**{16}** New Mexico follows the prior appropriation doctrine, which provides that "in the absence of an express grant of water rights, a conveyance will only include water rights if they are appurtenant to the land." *Roybal v. Lujan de la Fuente*, 2009-NMCA-114, ¶ 11, 147 N.M. 193, 218 P.3d 879; *see Walker v. United States*, 2007-NMSC-038, ¶ 21, 142 N.M. 45, 162 P.3d 882 (stating "a water right is not an automatic stick in the bundle of rights a landowner receives upon purchasing even a fee interest in land"); *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 23, 143 N.M. 142, 173 P.3d 749 (recognizing that

---

[9]Plaintiffs alleged in their motion for summary judgment and in their briefing to this Court that, "[i]n 1984 [they] purchased [twenty-four] Waterfall [subdivisions] lots, including the Water Rights[,]" (1984 Purchase) and that on February 14, 2008, CCC executed a second, corrected quitclaim deed to Plaintiffs, which they allege conveyed "[a]ll rights and interest to the tenements and lands and appurtenances granted to [CCC] in that certain Special Master's Deed dated May 17, 1979 . . . together with all water rights, and the rights to all springs located upon, or presently being utilized by or upon the properties conveyed hereby, together with all such water rights and springs which grantor might have or claim" (2008 Quitclaim Deed). Defendant disputes that the 2008 Quitclaim Deed had the legal effect of conveying all of the water rights claimed by Plaintiffs, and instead argues that both conveyances "included only the water rights which might be appurtenant to those lots." Under Rule 1-056(C) NMRA, the district court was not obligated to accept the parties' conclusions regarding the legal effect of the alleged conveyances; on the contrary, the court had a legal obligation to independently determine the legal effect of the conveyance of water rights. *See Vives v. Verzino*, 2009-NMCA-083, ¶ 10, 146 N.M. 673, 213 P.3d 823 ("[I]n ruling on a motion for summary judgment, a court is not wed to a party's assertion of conclusions of law whether in a petition, complaint, or motion for summary judgment, even if the conclusions are admitted by the opposing party."). As such, the parties' partial admissions regarding the alleged conveyances via the 1984 Purchase and 2008 Quitclaim Deed were not material to the district court's determination of whether disputed issues of fact precluded summary judgment in favor of Defendant.

water rights will not automatically accompany a conveyance of land except for water rights that are appurtenant to irrigated land). Plaintiffs argue that the water rights were expressly granted to CCC in the Special Master's Deeds, which Plaintiffs thereafter bought from CCC. However, the record does not contain an express grant of water rights to CCC in the Special Masters Deeds. Although Caidas Del Agua mortgaged to CCC "all water rights appurtenant thereto, and the rights to all springs located upon, or presently being utilized by or upon the properties conveyed hereby," the Special Master's Deeds only expressly granted to CCC "all tenements and appurtenances." The Special Master's Deeds are silent with respect to the interest in the "rights to all springs located upon, or presently being utilized by or upon the properties conveyed hereby."

**{17}** This Court in *Roybal v. Lujan de la Fuente* analyzed an issue similar to the present case: whether certain water rights are conveyed without specific language in the deed granting those rights. 2009-NMCA-114, ¶ 1. We explained that except for water used for irrigation, water rights are not appurtenant to the conveyance of land. *Id.* ¶ 12. This Court held that the failure of the deed to specifically convey water rights required the reversal of the district court's conclusion that the defendant possessed water rights through the deed. *Id.* This Court explained that since the deed was "silent as to water rights," that the water rights were therefore not conveyed with the land. *Id.*; *see also Hydro Res. Corp.*, 2007-NMSC-061, ¶ 23 ("Water rights that are not appurtenant to land are separate items of property and must be separately conveyed.").

**{18}** Here, because the Special Master's Deeds were silent as to the water rights, the rights were not conveyed with the land. In responding to Defendant's counter motion for summary judgment, Plaintiffs bore the burden of showing that the water rights and the WDS were included in CCC's foreclosure of its interest in Caidas Del Agua's property. *See Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241 ("Upon the movant [of the summary judgment motion] making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits."). To the extent Plaintiffs argue that CCC's 2008 Corrected Quitclaim Deed included language conveying all of the water rights to Plaintiffs, black letter law makes clear that CCC could not convey what it did not own. *See Metzger v. Elliz*, 1959-NMSC-031, ¶ 14, 65 N.M. 357, 347 P.2d 609 ("[A] quitclaim deed conveys nothing if the grantor himself did not have title or an interest in the property."). The district court declared that the constructive trust existed since 1980. Thus, to the extent Plaintiffs rely on any conveyances from CCC after 1980, Elkins could not have received the water rights or the WDS via the 1992 Purchase or 2005 Quitclaim Deed because the subdivisions' water rights were already held in trust by Defendant, appurtenant to each lot. Moreover, nowhere in the record, not even the 2008 Corrected Quitclaim, do Plaintiffs purport to receive "record title" of the WDS. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating the burden is on the appellant to clearly demonstrate that the district court erred).

**{19}** Because Plaintiffs failed to present any evidence otherwise, we conclude that the district court did not err in granting Defendant's motion for partial summary judgment

and concluding that there was no genuine issue of material fact that Plaintiffs own, at most, the water rights appurtenant to the lots they currently own in the Waterfall subdivisions, and that the WDS was abandoned to the property owners. Consequently, under New Mexico's prior appropriation doctrine, Plaintiffs have no claim to ownership to all the water rights. We therefore do not reach the issue of whether the Ysleta Decree and New Mexico law permit separation of the water rights because we hold that Plaintiffs have not demonstrated that they could have record title to the water rights or the WDS.

## B. The District Court Did Not Err in Granting Defendant's Motion for Partial Summary Judgment and Dismissing Counts II, III, and IV of Plaintiffs' Complaint with Prejudice

**{20}** Plaintiffs argue that the district court erred in dismissing Count II, seeking the dissolution of the constructive trust. Plaintiffs also argue that the district court erred in dismissing Counts III and IV "presumably on the ground that dismissal of [Plaintiffs'] ownership claims mooted the rest of the *Complaint*," because it did not "consider the undisputed evidence relating to these claims." Defendant argues that Plaintiffs did not preserve these claims. Defendant further argues that from the time of the entry of the district court's minute order on February 24, 2010, to the entry of the district court's final judgment, Plaintiffs did not object to the dismissal of their remaining claims, did not bring the outstanding claims to the district court's attention, and did not otherwise invoke a more specific ruling. We review Plaintiffs' arguments to the extent they are based on something other than Plaintiffs' asserted ownership rights. To the extent they are predicated on ownership rights, those claims fail as a matter of law given our affirmance of the district court's ruling as to Count I of Plaintiffs' complaint asserting ownership of the collective water rights.

**{21}** "To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted).

> The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.

*Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791.

**{22}** Contrary to Plaintiffs' argument, the district court assumed that any claim based on Plaintiffs' asserted ownership of water rights beyond those appurtenant to their own purchased parcels is resolved as a matter of law by the district court's ruling regarding

ownership. These counts were briefed and argued by the parties at the summary judgment stage. After the district court granted Defendant's partial summary judgment motion, it denied Plaintiffs' motion and effectively dismissed Counts II, III, and IV as a matter of law based on the court's judgment to proceed to trial only on the merits of the counterclaims. We affirm the dismissal as a matter of law.

**Count II**

**{23}** For Count II, Plaintiffs sought dissolution of the constructive trust because "[Plaintiffs'] ownership of the Culbertson Spring[s] water rights and the [WDS] eliminate the need for the implied constructive trust." On appeal, Plaintiffs argue that the constructive trust was only a "stop-gap measure" to exist "in the absence of clarity regarding the ownership and management responsibilities" and until the parties formed a water and sanitation district. They argue that "with a final determination of the ownership of the [w]ater [r]ights and WDS," the constructive trust should be dissolved.

**{24}** Defendant argues that since Plaintiffs are not the "lawful owners" of the water rights or the WDS, their claim for dissolution of the constructive trust fails as a matter of law. In their reply brief, Plaintiffs do not respond to Defendant's argument that the claim fails as a matter of law, and given the conclusion affirmed here as to Count I that Plaintiffs do not have the ownership rights they claim, we agree that Plaintiffs' argument fails. Otherwise, to the extent Plaintiffs argue anything beyond ownership relating to the constructive trust, the argument is not developed and we cannot review it. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that an appellate court need not review an undeveloped argument); *see also Farmers, Inc.*, 1990-NMSC-100, ¶ 8 (stating the burden is on the appellant to clearly demonstrate that the trial court erred). We therefore conclude that the district court did not err in dismissing Plaintiffs' claim for dissolution of the constructive trust.

**Count III**

**{25}** For Count III, Plaintiffs sought injunctive relief and requested that Defendant be enjoined to withdraw its alleged declarations of ownership, stop demanding property owners to join Defendant's Association as a condition to receiving water, and provide water service to all lot owners. "Injunctions are harsh and drastic remedies which should issue only in extreme cases of pressing necessity and only where there is a showing of irreparable injury for which there is no adequate and complete remedy at law." *Padilla v. Lawrence*, 1984-NMCA-064, ¶ 22, 101 N.M. 556, 685 P.2d 964. "The phrases 'irreparable injury' and 'no adequate and complete remedy at law' tend to overlap. An injury that is irreparable is without adequate remedy at law. Thus, an 'irreparable injury' is an injury which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard." *State ex rel. State Highway & Transp. Dep't v. City of Sunland Park*, 2000-NMCA-044, ¶ 19, 129 N.M. 151, 3 P.3d 128 (alteration, internal quotation marks, and citations omitted). "The injury must be actual and substantial, or an affirmative prospect thereof, and not a mere possibility of harm." *Id.* (internal quotation marks and citation omitted). "It is not enough that the party

seeking injunctive relief merely claim irreparable harm; he must come forth with evidence of the irreparability of his harm or inadequacy of any remedy." *Id.*

**{26}** In *City of Sunland Park*, we reversed a grant of injunctive relief because the alleged economic harm was inadequate. *Id.* ¶ 21. In that case, the plaintiff, Doña Ana County, alleged injury in the form of "economic harm it would suffer if its plans to supply water to parts of the [c]ounty were thwarted by the [c]ity's construction of a water system covering some of the same areas." *Id.* We held that that harm was "entirely too speculative to support the issuance of an injunction." *Id.* In addition, the loss of a revenue source or the costs of constructing a water system was a quantifiable harm and went to the adequacy or inadequacy of the remedy at law, but was not presented. *Id.* The plaintiff was not entitled to an injunction because it failed to present evidence of past or future revenue losses, making its plan "too incomplete and indefinite to support injunctive relief." *Id.* Although we pointed out that "under certain circumstances the continuing interference with another's rights in land might render a remedy at law inadequate," there were not enough facts in the record to rule on "whether the [c]ity had the authority to condemn the right of way and pay the [c]ounty therefor." *Id.* ¶ 23 (internal quotation marks and citation omitted); *see Kennedy v. Bond*, 1969-NMSC-119, ¶¶ 15-17, 80 N.M. 734, 460 P.2d 809 (affirming grant of injunctive relief where the appellant's interference with reasonable use of an easement by the other party for ingress and egress to their property was a constant recurrence that could only be remedied by a multiplicity of suits).

**{27}** Similarly, in this case, Plaintiffs' only assertion not based on ownership that points to an "irreparable injury" is that Defendant's notice that it will not provide water to future lot purchasers "makes it impossible for Waterfall owners to sell their lots." This, Plaintiffs argue, "interferes with [their] right to alienate their property." In support, they cite to Elkins' affidavit wherein he states that (1) Defendant issued a notice in the local paper that it would not provide water to future property owners; (2) they had "numerous lots" listed with a real estate broker who placed them for sale; and (3) they have not been able to list or sell any of their lots since the notice "because buyers would not purchase these residential lots unless they have water service." We find no further support or evidence referenced in their motion or reply, or in Elkins' testimony at trial. As we held in *City of Sunland*, we likewise hold here that Plaintiffs' conclusory and self-serving statements are insufficient to establish an actual and substantial injury for which relief may be granted as a matter of law. Plaintiffs' alleged harm needed to have been quantified to support the adequacy or inadequacy of the remedy; yet, as presented, their purported harm is too speculative and unsupported. We therefore affirm the district court's denial of summary judgment and dismissal of this claim.

**Count IV**

**{28}** For Count IV, Plaintiffs argue that they are entitled to summary judgment on their claim for damages resulting from Defendant's conversion of the water without payment, and included an additional claim that Defendant's use of the water amounted to an unconstitutional taking without just compensation under the New Mexico Constitution

Article II, §§ 4, 18, 20, and U.S. Constitution Amendments V and XIV. Conversion is "the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constitute an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *In re Yalkut*, 2008-NMSC-009, ¶ 25, 143 N.M. 387, 176 P.3d 1119. "The elements of the tort of conversion by demand and refusal are: (1) that the plaintiff had the right of possession of personal property; (2) that the plaintiff demanded that the defendant return the property to [the] plaintiff; and (3) that the defendant refused to return the property to [the] plaintiff." *Nosker v. Trinity Land Co.*, 1988-NMCA-035, ¶ 15, 107 N.M. 333, 757 P.2d 803.

**{29}** In their motion for summary judgment, Plaintiffs claim that Defendant converted their water because Defendant ignored their "demands for reimbursement for use of their water" since 2005, thus entitling Plaintiffs to "reasonable payment for [Defendant]'s unauthorized use of their water and [the] WDS." The premise of this claim, that Plaintiffs own the water rights for the Waterfall subdivisions, has been rejected by the district court and which we have affirmed as discussed earlier in this opinion. Absent ownership or the right of possession of the water rights and the WDS, this claim fails as a matter of law. *See Nosker*, 1988-NMCA-035, ¶¶ 18-20 (concluding that the plaintiff's conversion claim failed because the plaintiff did not establish that he had a possessory or ownership interest in the equipment at the time of the alleged conversion since he had assigned his interest to a third party and failed to make a demand for return of personal property right after his right to possess had accrued). Thus, the dismissal of Count IV was proper.

## II. The District Court Did Not Err as a Matter of Law in Dismissing Plaintiffs' Counts V and VI in the Final Judgment

**{30}** Plaintiffs also argue that the district court erred as a matter of law in dismissing Counts V and VI "regardless [of] whether the lower [c]ourt's rulings on the ownership issues are reverse or affirmed." Count V sought damages for slander of title, regarding a notice Defendant published stating it would not provide water service to new lot purchasers. Count VI sought damages for interference with the prospective sale of Plaintiffs' real estate. Counts V and VI were neither briefed by the parties at the summary judgment stage, nor litigated at the trial on the merits, and arguably are not resolved by the district court's conclusion with respect to ownership, but were nevertheless dismissed by the district court in the final judgment without any further action by Plaintiffs. We therefore decline to consider these unpreserved claims. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue.").

**{31}** We note, however, that the record supports Defendant's contention that Plaintiffs had several opportunities to raise the merits of Counts V and VI prior to dismissal: litigating these issues at the trial in submitting proposed findings of facts and

conclusions of law; in filing an amended final argument; at the presentment hearing on Plaintiffs' form of order reflecting the final judgment; or in approving the final form of judgment dismissing the complaint with prejudice. "It is the duty of a litigant, if he desires a review of the ruling of the court, to see that the record presented is properly prepared and completed." *Berksteresser v. Voight*, 1958-NMSC-017, ¶ 13, 63 N.M. 470, 321 P.2d 1115. "Otherwise, the correctness of the ruling cannot be questioned." *Id.* We therefore conclude that the district court did not err in dismissing these claims. *See id.* (holding that the district court did not err in omitting theory of negligence from jury instructions where the theory was not in the pre-trial order because "appellant seems to have made no attempt to clarify the record, if it were not correct").

**III.     The District Court Did not Err in Entering Judgment for Defendant After a Trial on the Merits of Defendant's Counterclaims**

**{32}**     We review "the [district] court's findings of fact to determine if there is substantial evidence to support the determinations." *Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Sanchez v. Saylor*, 2000-NMCA-099, ¶ 12, 129 N.M. 742, 13 P.3d 960 (internal quotation marks and citation omitted). Defendant's successful counterclaim against Plaintiffs was for costs and charges for the operation of the WDS for water delivery service to Plaintiffs' properties. We begin by reviewing the scope of Plaintiffs' obligations to pay Defendant and its predecessor in interest, WPOA.

**{33}**     In 1988, WPOA filed a lawsuit against Elkins, claiming ownership and operation of the WDS since 1980 and alleging that it had assumed road maintenance responsibilities since early 1988. *See Waterfall Prop. Owners v. Elkins*, Otero County Cause No. CV-88-355. WPOA sought damages for wrongfully-appropriated water. *Id.* The 1988 lawsuit was resolved after the parties entered a settlement agreement (1990 Settlement), whereby Elkins agreed, in relevant part, to pay "the normal water distribution fee for permanent water service." The parties' agreement to comply with the 1990 Settlement was memorialized in the 1991 Settlement Agreement.

**{34}**     After the trial on the merits in a subsequent 2001 lawsuit, the district court concluded that Defendant was the sole operator and in control of the WDS including the maintenance of roads, all utility easements, sanitary waste disposal, and snow removal necessary to operate the WDS; and that Elkins was liable to Defendant for "all normal water charges including necessary expenses to operation of the [WDS] pursuant to the [1991] Agreement." The district court concluded that water delivery charges "may include expenses incurred by [Defendant] for street maintenance, snow removal, solid waste disposal, a computer and other reasonable office expenses, liability insurance for officers and directors of [Defendant], and attorney fees, including fees expended to seek court ordered compliance by [Elkins]." But, the district court concluded, Elkins would not be "liable to [Defendant] for water delivery fees which include charges for real property taxes on real property holdings not related to the production of water for the water system and for expenses in maintaining ponds and streams that are not a source of

water for the water system." Elkins appealed to this Court, and we affirmed. *Elkins I*, No. 26,767, mem. op. at 13.

**{35}** After a trial on the merits in the current lawsuit, on Defendant's two counterclaims, the district court entered the following findings. Prior to 1999, WPOA operated the WDS. Since 1999, Defendant has been the duly constituted successor trustee to WPOA for control of the water rights and has been operating the water system utilizing such water rights for distribution of domestic water to the lot owners in the Waterfall subdivisions. Defendant, a political subdivision of the State of New Mexico and a public entity, has operated the system under the provisions of the Sanitary Projects Act, NMSA 1978, Sections 3-29-1 to -21 (1965, as amended through 2017). Defendant charges its members for the cost of maintaining the WDS and delivering water to members' property in the community. Plaintiffs have water connections and, thus, delivery of water to their properties. Defendant may charge Plaintiffs for use of Defendant's water delivery lines, but not the cost of the water delivered to Plaintiffs' property. The lines running to Plaintiffs' properties are not metered, and therefore Defendant does not meter water used, but rather charges for maintenance of the delivery lines. Defendant's charges to Plaintiffs are reasonable. Since at least 2003, Plaintiffs have refused to pay any portion of the costs and charges assessed for the operation of the WDS, and have failed to pay $6,481.38 for water services to lots owned by Plaintiffs from the 2003-2004 fiscal year through August 2011. Plaintiffs assert that they have voluntarily declined to use water from Defendant's water lines, and otherwise offered no proof that they were deprived of any water owned by them.

**{36}** The district court concluded, as a matter of law, that water had been "delivered" to the Plaintiffs' properties and, thus, Plaintiffs could be charged for the cost of the use of Defendant's WDS. The district court also concluded that "Defendant is entitled to the reasonable cost of deliver[y] access to water to Plaintiffs" and that "Plaintiffs' voluntary non-use of water is a surrender of their water to Defendant."

**{37}** On appeal, Plaintiffs argue that the district court erred in awarding Defendant $6,481.38 for unpaid costs and charges for the operation of the WDS. Plaintiffs do not take issue with the amount awarded to Defendant, but rather argue that they are not required to pay for water that was not actually "delivered" to their properties.

**{38}** The district court's judgment is based on the 1990 Settlement, wherein Elkins agreed "to pay the normal connection fees for permanent water service to any lot owned by [Elkins] prior to the permanent connection" and "to pay the normal water distribution fee for permanent water service." *See Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 19, 131 N.M. 450, 38 P.3d 891 ("Public policy encourages settlement agreements, and the courts have a duty to enforce them."). The language of that agreement, which was incorporated into the 1991 Agreement and enforced by the 2006 judgment, does not condition Plaintiffs' liability on actual "delivery" of water, as Plaintiffs now argue, particularly where Plaintiffs acknowledged that they have refused to accept water from Defendant's pipelines. Although Plaintiffs contend that no water was ever "delivered," they fail to develop or demonstrate why delivery is at issue for these unpaid

water charges given that they have been liable to Defendant for associated operation costs since 1990. *See Headley*, 2005-NMCA-045, ¶ 15.

**{39}** Plaintiffs attempt to argue on appeal that although they chose not to receive water at their properties, this amounted to a non-delivery within the meaning of the prior agreements and court order. The district court rejected this argument. Plaintiffs proposed finding of fact number 35 that Defendant's representative, testified on behalf of [Defendant], "[i]f [Defendant] is not delivering water to Elkins, he does not have to pay for it," and proposed finding of fact number 30 that "[Defendant] admits that after it disconnected the water supply to [Plaintiffs'] Properties, there was no further water delivery to [Plaintiffs] while they owned those properties. The district court rejected Plaintiffs' proposed findings of fact, and on appeal, we are bound by the district court's rejection. *See Hill v. Cmty. of Damien of Molokai*, 1996-NMSC-008, ¶ 41, 121 N.M. 353, 911 P.2d 861 ("Failure to adopt a proposed finding of fact is in effect a negative finding with respect to that fact, which binds th[e] Court on appeal."); *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (stating that "we will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder"). Accordingly, the district court's judgment is supported by substantial evidence found in the parties' 1990 Settlement and 1991 Agreement; the district court's judgment in the 2001 lawsuit (which was affirmed in this court's 2008 opinion); and the district court's rejection of Plaintiffs' proposed findings of fact. *See Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12 ("The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached.").

**CONCLUSION**

**{40}** For the foregoing reasons, we affirm the district court.

**{41} IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**I CONCUR:**

**KRISTINA BOGARDUS, Judge**

**LINDA M. VANZI, Judge, concurs in result only.**