1997-NMCA-040

940 P.2d 468

**Palmyra GALLEGOS, personally and as Mother and Next Friend of Martha Gallegos, a Minor, and Catherine Gallegos, a Minor, and Delfido Gallegos, Plaintiffs–Appellees/Cross–Appellants,**

v.

**STATE OF NEW MEXICO BOARD OF EDUCATION, and School Transportation Division of the State of New Mexico Department of Education, Defendants–Appellants/Cross–Appellees.**

No. 16780.

Court of Appeals of New Mexico.

March 26, 1997.

Certiorari Denied May 6, 1997.

Elliot L. Weinreb, Steven L. Tucker, Santa Fe, for Plaintiffs–Appellees/Cross–Appellants.

Walz and Associates, Jerry A. Walz, Albuquerque, New Mexico Legal Bureau–Risk Management Division, Paul Ritzma, Santa Fe, for Defendants–Appellants/Cross–Appellees.

## OPINION

BUSTAMANTE, Judge.

1. The State Transportation Division of the State of New Mexico Board of Education (the Division) appeals from a judgment entered on a jury verdict finding the Division partially liable for injuries suffered by Martha Gallegos when she was struck by a vehicle as she attempted to cross State Road 3 in order to catch the bus to her school. Plaintiffs (Martha and her parents) cross-appeal on the issue of whether the tort claims damages cap under NMSA 1978, Section 41–4–19 (Repl.Pamp.1989) is constitutional.

2. On appeal, the Division argues that:

(1) the exclusive remedy provision in NMSA 1978, Section 41–4–17(B) (Repl. Pamp.1996), barred recovery from it because Plaintiffs settled their claims against certain county and local governmental entities;

(2) the Division had no legal duty to establish location of bus stops and thus owed no duty of care to Plaintiffs;

(3) there was insufficient evidence to show that (a) the bus stop was negligently located, (b) determination of the location of the stop constituted maintenance of a highway, or (c) the location of the bus stop proximately caused the occurrence;

(4) the Division was entitled to mistrial based on remarks made during Plaintiffs' closing argument;

(5) the trial court erred in refusing the Division's tendered jury instructions; and

(6) the trial court erred in denying the Division's motions for new trial or remittitur for damages awarded to Martha's parents. We affirm.

3. With respect to the cross-appeal, the parties have stipulated that, if the cap is held unconstitutional after further hearing in *Trujillo v. City of Albuquerque*, 119 N.M. 602, 603, 893 P.2d 1006, 1007 (1995), the case may be reopened and the judgment amended. Furthermore, Plaintiffs failed to preserve their argument regarding application of the cap. Therefore, we dismiss the cross-appeal.

4. On January 10, 1989, seven-year-old Martha Gallegos was struck by a vehicle as she attempted to cross State Road 3 in order to reach her school bus stop. The driver of the vehicle, Martha's great-uncle, was driving into a blinding sun without use of sunglasses or his prescription eyeglasses. Palmyra Gallegos, Martha's mother, was watching from inside her home and saw Martha struck by the vehicle. Martha suffered various injuries which can reasonably be characterized as serious.

5. Plaintiffs filed a complaint against the Division, the New Mexico State Police, the New Mexico State Highway Department, the Board of Commissioners of San Miguel County, the County Sheriff's Department, the School District of West Las Vegas, the Las Vegas Schools Transportation Director, and the school bus driver. Plaintiffs settled with those defendants connected with San Miguel County and the School District of West Las Vegas, but proceeded to trial against the Division and the New Mexico State Highway Department. The complaint against the New Mexico State Police was voluntarily dismissed by Plaintiffs.

6. After trial, the jury found no liability with regard to the State Highway Department but assigned 37.5% liability to the Division. The Division filed motions for a new trial, remittitur, and judgment notwithstanding the verdict. All were denied.

DISCUSSION

*Application of NMSA 1978, Section 41–4–17(B)*

7. Prior to trial, the Division sought summary judgment asserting that Section 41–4–17(B) barred Plaintiffs' claims against the Division. Making a plain language argument, the Division asserted that Plaintiffs' settlement with the county defendants and the school district defendants precluded Plaintiffs from pursuing any claims, arising out of the same accident, against any other governmental entity. The trial court denied the Division's motion for summary judgment. The Division reiterates its "plain reading" argument here.

8. Before reaching the merits of the argument, however, we must decide whether the denial is reviewable on appeal. Plaintiffs argue that the Division is not entitled to have this Court review the issue because the Division did not raise the argument in a motion for directed verdict or in a post-trial motion. Plaintiffs rely on *Green v. General Accident Insurance Co. of America*, 106 N.M. 523, 527, 746 P.2d 152, 156 (1987), for the blanket proposition that denial of motions for summary judgment simply are not reviewable after final judgment on the merits. As explained below, we do not believe *Green* was intended to create as broad and seamless a blanket as Plaintiffs describe.

9. A party moving for summary judgment must show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Ciup v. Chevron U.S.A., Inc.*, 122 N.M. 537, 540, 928 P.2d 263, 266 (1996) (relying on *Koenig v. Perez*, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986)); *Garrity v. Overland Sheepskin Co. of Taos*, 121 N.M. 710, 718, 917 P.2d 1382, 1390 (1996) (same); *Tabet Lumber Co. v. Romero*, 117 N.M. 429, 431, 872 P.2d 847, 849 (1994) (same). At issue in the vast majority of summary judgment cases presented to New Mexico's appellate courts is the first prong; that is, whether there are genuine issues of material fact. *See, e.g., Silva v. Town of Springer*, 121 N.M. 428, 433, 912 P.2d 304, 309, (Ct.App.) (concluding that a material disputed factual issue existed precluding the grant of summary judgment), *cert. denied*, 121 N.M. 375, 911 P.2d 883, *and cert. denied*, 121 N.M. 444, 913 P.2d 251 (1996); *Blauwkamp v. University of N.M. Hosp.*, 114 N.M. 228, 233, 836 P.2d 1249, 1254 (Ct.App.1992) (holding that plaintiff's re-

sponse to defendant's motion for summary judgment indicated the existence of material issues of fact). In such cases, the rationale behind the general rule stated in *Green* applies with full force. Trial provides the only opportunity for the parties to make a full presentation of the facts. Full review of the facts provides the fact finder an obviously better basis upon which to make determination about the historical circumstances of the case. It would be unfair to review a denial of a motion for summary judgment based on the factual presentation made to the trial court at the time of the motion, when all the facts have subsequently come forward at trial. After trial, the fact finder knows more and is in a superior position to decide all issues, those purely factual as well as those legal issues dependent to some degree on the historical facts in the case. Whether this proposition is labeled "merger," or is simply accepted as a common sense recognition that decisions made after full airing of the evidence should not be disturbed, is of little analytic consequence. The rule stated in *Green* is salutary for such cases.

10. However, *Green* did not reach, nor did it need to address whether a different rule of reviewability might be appropriate if the motion only addressed a pure question of law. Where a motion for summary judgment is based solely on a purely legal issue which cannot be submitted to the trier of fact, and the resolution of which is not dependent on evidence submitted to the trier of fact, the policy rationale underlying the rule enunciated in *Green* is inapplicable and the issue should be reviewable on appeal from the judgment.

■ 11. Our appellate courts are not bound by the conclusions of law reached by the trial court, and the applicable standard of review for such issues is de novo. *See Harger v. Structural Servs., Inc.,* 121 N.M. 657, 666, 916 P.2d 1324, 1333 (1996) (Supreme Court stating, on a question of law, that it was "in as good a position to draw its own conclusions" as the lower courts); *Western Bank of Las Cruces v. Malooly,* 119 N.M. 743, 748, 895 P.2d 265, 270 (Ct.App.1995) (appellate court reviews trial court's ruling on a question of law under a de novo stan-

dard). Absent a specific rule, appellate courts do not normally lose their ability to review purely legal questions simply because there has been a trial in the matter. Additionally, our rules of appellate procedure generally support rather than refute review. *See* NMRA 1997, 12–216(A) ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required, nor is it necessary to file a motion for a new trial to preserve questions for review.").

■ 12. We conclude that as long as (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law which does not depend to any degree on facts to be addressed at trial, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom, then the appellant may include in the appeal the purely legal issues that were argued unsuccessfully in the motion for summary judgment, and the appellant need not have renewed that legal issue during trial to preserve it. *See Johnson v. Alaska State Dep't of Fish & Game,* 836 P.2d 896, 904 n. 11 (Alaska 1991) ("Denials of summary judgment also may be reviewable on appeal when final judgment in a case comes after trial, but only if the facts applicable to the summary judgment ruling were not in dispute and the basis of the ruling is a matter of law."); *Bureau of Highways, Ky. v. Leneave,* 751 S.W.2d 36, 37 (Ky.Ct.App.1988) (relying on *Gumm v. Combs,* 302 S.W.2d 616, 617 (Ky.1957)); *Presbyterian Univ. Hosp. v. Wilson,* 99 Md. App. 305, 637 A.2d 486, 490–91 (1994), *aff'd,* 337 Md. 541, 654 A.2d 1324 (1995) (holding that pure issue of law is preserved by motion for summary judgment and is reviewable after final judgment); *DeJonge v. Mutual of Enumclaw,* 104 Or.App. 296, 800 P.2d 313, 314 (1990) ("In a case that has gone to trial, the pre-trial denial of a motion for summary judgment is not reviewable on appeal, unless the motion raised purely legal issues and the moving party did not have to establish any 'adjudicative facts' to prevail on the motion.")

13. We are sensitive to the fact that our conclusion is contrary to the great weight of authority in the federal courts and our sister

states. Most courts considering this issue have chosen to adopt a bright line rule, primarily because of perceived difficulties with administration of any rule meant to differentiate between "legal" and "factual" issues. *See, e.g., Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1248–50 (Colo.1996). We have no quarrel with those concerns, but believe they can be adequately managed short of absolutely disallowing review. We would expect that all doubts about whether a motion was dependent on or affected by facts addressed at trial would be resolved against the appealing party. Thus, prudent counsel would be well advised to protect the record by motion for directed verdict or appropriate post-trial motion. However, where, as here, the motion for summary judgment turns on a purely legal issue which was not the subject of testimony at trial—i.e., the legal effect of prior settlement with another party—review should be available without the perfunctory act of renewal during trial. That is the situation here. Accordingly, we conclude that this Court may address the Division's arguments.

■ 14. Turning to that argument, we do not believe the statute can bear the Division's expansive interpretation, and we thus affirm the trial court's denial of the motion for summary judgment. We hold that Section 41–4–17(B) did not preclude Plaintiffs' claim against the Division.

15. Section 41–4–17(B) states: "The settlement or judgment in an action under the Tort Claims Act shall constitute a complete bar to any action by the claimant, by reason of the same occurrence against a governmental entity or the public employee whose negligence gave rise to the claim."

■ 16. In determining the meaning of the section, we must first examine the plain meaning of the language used. *See Bybee v. City of Albuquerque,* 120 N.M. 17, 21, 896 P.2d 1164, 1168 (1995). Section 41–4–17 is couched in terms of the Act being the exclusive remedy against "a governmental entity." There is nothing in the statute as a whole that indicates the legislature was thinking of multiple-entity liability when it adopted this language. The most natural reading of the statute is that if, after bringing suit against a discrete governmental entity under the Tort Claims Act, a claimant settles with that entity, the claimant is barred from pursuing any other action against that entity or against its employees if the action arises from the same occurrence or set of circumstances. In other words, Section 41–4–17(B) is a statutory variant of the claim preclusion doctrine.

17. Applying this interpretation to the facts of this case, after settlement, Plaintiffs were barred from bringing further action against the West Las Vegas School District, the San Miguel Board of Commissioners, the San Miguel Sheriff's office, or any employees of those entities. Settlement with these entities would not, however, protect the Division from liability for its share of comparative negligence. If the Legislature had intended the statute to act as such a bar, it could have used language that clearly expresses that intention. For example, instead of using language such as "against a governmental entity," the Legislature could have stated, "against any governmental entity." The Legislature did not use such language.

18. Further, the Division's position would result in at least two untoward consequences which argue against its position. First, the Division's interpretation of the statute would discourage settlement. *See Gonzales v. Atnip,* 102 N.M. 194, 195, 692 P.2d 1343, 1344 (Ct.App.1984) (public policy favors settlement of disputed claims). Under the Division's interpretation, a plaintiff who filed suit against more than one governmental entity could not settle with one entity, even if it was clear that the entity was only partially liable, without forfeiting her claims against all of the other entities. Faced with such a choice, plaintiffs would be required to opt between simply abandoning claims or going to trial against all defendants. Too often the choice would have to be to go to trial, and to that extent, our strong public policy in favor of settlement would be thwarted.

19. Conversely, defendants could be forced into unduly harsh quandaries. For example, if an entity with a small liability risk filed a reasonable offer of judgment pursuant to NMRA 1997, 1–068, plaintiff would be forced to refuse the offer—other-

wise acceptable—in order not to lose claims against the primary tortfeasor entity. Thus, the adverse effects of the Division's position would not be limited to plaintiffs. Entities with relatively small liability risk could be forced to go to trial rather than settling quickly for reasonable amounts, thus increasing the cost of litigation at all levels. This would undermine the policy of our Supreme Court favoring settlements which is implicit in Rule 68. In the absence of explicit language indicating a desire to discourage settlements in this manner, we will not interpret the statute as urged by the Division.

20. Second, the Tort Claims Act provides that governmental tort liability is to be determined using "traditional tort concepts of duty and the reasonably prudent person's standard of care...." NMSA 1978, § 41–4–2(B) (Repl.Pamp.1996). New Mexico has adopted the principle of comparative negligence, allowing the relative responsibility of tortfeasors, whether public or private, to be determined in each case. *See* NMSA 1978, § 41–3A–1 (Repl.Pamp.1996); *Bartlett v. New Mexico Welding Supply*, 98 N.M. 152, 158, 646 P.2d 579, 585 (Ct.App.1982). Adoption of the Division's interpretation would frustrate operation of comparative negligence principles in all cases involving multiple governmental entities because settlement with one would relieve all others of their comparative liability. We sense no hint of legislative intent or purpose to alter the normal workings of tort actions in this manner.

21. The Division relies on *Sugarman v. City of Las Cruces*, 95 N.M. 706, 625 P.2d 1223 (Ct.App.1980), in support of its argument. *Sugarman* is distinguishable and has no application to the facts of this case. There, a county hospital sought to bar the claimant's suit against it because she had settled with the tortfeasor doctor before any suit had been filed. *Id.* at 707, 625 P.2d at 1224. Strictly construing the statute, this court held that, because settlement had occurred before filing of suit, "there ha[d] been no 'settlement under the Tort Claims Act.'" *Id.* at 708, 625 P.2d at 1225. As a consequence, Section 41–4–17(B) did not come into play and did not bar suit against the hospital. *Sugarman* did not address the application of

Section 41–4–17(B) in circumstances similar to those in this case.

*The Division's Duty to Establish and Approve Bus Stops*

■ 22. The Division has a statutory responsibility to establish and approve school bus routes for transportation of students. *See* NMSA 1978, § 22–16–2(C) (Repl. Pamp.1993). Section 22–16–2(C) provides that "the state transportation division shall ... establish and approve school bus routes for the transportation of students ... to and from public schools." NMSA 1978, Section 22–16–4(A) (Repl.Pamp.1993) requires the Division to approve the routes annually. NMSA 1978, Section 22–16–11(A) (Repl. Pamp.1993) allows the Division to adopt and enforce regulations governing the operation of school buses. Pursuant to the latter provision, the Division promulgated Regulation 83–3 (3.2.1(a)), which provides:

> All regular school bus stops utilized to load or unload students should be established by a coordinated effort between the local school bus operator, school administrator responsible for transportation and a member of the police organization having jurisdiction. School bus stops may be reviewed and changed by the State School Transportation Division.

The Division argues there is a difference between "routes" and "stops," and that because it delegated its duty to establish bus stops to the local bus operators, school districts, and police departments, maintaining only a discretionary review over the decisions of those groups, it had no legal duty, and thus, no liability, to Plaintiffs. We disagree. We decline to adopt the Division's artificial and strained attempt to disconnect bus stops from the routes themselves. The statutory responsibility to establish bus stops remains with the Division.

■ 23. Accepting the Division's interpretation of the regulation does not change the result. There is an apparent conflict between Regulation 83–3, as read by the Division, and Section 22–16–2(C). As noted above, our statute assigns the ultimate responsibility, and thus the duty, to establish bus routes to the Division. When a statute

and a regulation conflict, the statute prevails. *Jones v. Employment Servs. Div. of the Human Servs. Dep't,* 95 N.M. 97, 99, 619 P.2d 542, 544 (1980).

24. Moreover, even under Regulation 83–3, the Division did not entirely relinquish its duty to establish bus routes. It retained the authority to review and change decisions made by school districts concerning bus routes. This role is sufficient in this context reasonably to impose a duty of care. It should be noted that the Division exercised its authority by later requiring changes in this bus route minimizing the need for children to cross the road.

*Sufficiency of Evidence Issues*

25. The Division argues there was insufficient evidence to support findings that: (1) the bus stop was negligently located; (2) placement of the bus stop constituted maintenance of a road, rather than being an aspect of plan or design, or failure to construct or reconstruct; (3) the Division's activities fell within the parameters of NMSA 1978, Section 41–4–11(A) (Repl.Pamp.1996); or (4) the location of the bus stop was a proximate cause of the accident.

26. In considering a substantial evidence claim, the appellate court resolves "all disputed facts in favor of the successful party," and indulges "all reasonable inferences in support of a verdict," and disregards "all evidence and inferences to the contrary." *Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984). However, we review substantial evidence issues only if we are referred to all the evidence in the record which bears on the issue. NMRA 1997, 12–213(A)(3); *Martinez v. Southwest Landfills, Inc.,* 115 N.M. 181, 185–86, 848 P.2d 1108, 1112–13 (Ct.App.1993). It is the appellant's responsibility initially to provide the court with a summary of *all* the evidence, along with appropriate references to the record. The Division has complied with the rule only marginally with regard to issues 1 and 2 above, and it has failed to comply with the rule with regard to issues 3 and 4. We thus deem the Division's arguments waived as to issues 3 and 4, and we will not respond to them substantively.

27. With regard to issues 1 and 2, there was evidence that all bus stops on Martha's route were located on one side of the road, creating a situation where children were forced to cross the road in order to board the school bus. Although the Division claims that there was evidence to the contrary, we disregard any such evidence. *See Harmon,* 102 N.M. at 168–69, 692 P.2d at 1317–18. There was evidence that road crossings by children, in particular children of tender years such as Martha, are hazardous and must be kept to a minimum. There was evidence that, based on the physical characteristics of this route, there was no reason to have a situation where children would have to cross the road and that stops should have been established on both sides of the road. This evidence provides substantial support for the jury's finding that the bus stop was negligently located.

28. The Division claims that the placement of the bus stop does not constitute maintenance but rather is part of the design of the road, and, therefore, immunity is not waived under Section 41–4–11. In an earlier appeal in this case, we stated that the decision to locate a bus stop at a particular place was a matter of maintenance unless there were specific facts showing that the location was a part of the design of the road. *See Gallegos v. School Dist. of West Las Vegas,* 115 N.M. 779, 781, 858 P.2d 867, 869 (Ct.App. 1993). The Division has not provided any reference to the record containing specific facts showing that the bus stops were part of the design of the road. Instead, the Division again argues that the responsibility for the details of the bus routes belong to the local school district. This is clearly insufficient. In addition, at trial, Plaintiffs presented evidence that the road was built in 1917, and that the bus stop was not built or designated until 1970. This is sufficient evidence to support a finding that designation of the bus stop was not a part of the design of the road.

29. In addition, there was evidence that the Division employees had inspected the bus routes for safety and should have recognized that it was dangerous to have children cross the road to board the bus. This activity

bolsters our conclusion that location of the bus routes should be categorized as maintenance in this case.

*Remarks by Plaintiffs' Counsel*

■ 30. The Division argues that the trial court erred in failing to grant a mistrial based on remarks made by Plaintiffs' counsel during closing argument. Our standard of review is abuse of discretion, and, absent a clear abuse of discretion, we will not reverse. *See State v. Abeyta*, 120 N.M. 233, 247, 901 P.2d 164, 178 (1995); *Grammer v. Kohlhaas Tank & Equip. Co.*, 93 N.M. 685, 693, 604 P.2d 823, 831 (Ct.App.1979).

31. The Division primarily complains about three statements made by Plaintiffs' counsel during closing arguments. The first involved a misstatement by counsel about Plaintiffs' recovery of damages as a result of Martha's mishap. In essence, counsel stated, or left the impression, that this lawsuit was the only chance for Plaintiffs to receive any compensation. This statement was misleading because Plaintiffs had already settled with a number of the defendants and thus had received some compensation. Counsel and the trial court engaged in a fairly heated exchange concerning the misimpression left by counsel with the jury, and the trial court eventually required counsel to go before the jury and correct the misimpression. Counsel complied with the trial court's request and informed the jury that he

> didn't intend to imply that this is the only award of damages that Martha and her family might recover as a result of this accident. What it is, is the only opportunity that Martha and her family have to recover damages from these two Defendants, the State Highway Department and State School Division[.]

32. Second, while addressing the Mother's bystander damages, Plaintiffs' counsel stated, "I suggest you tie the amount of Palmyra's damages for her emotional distress and pain and suffering, which is what you award to Palmyra, to the amount of Martha's damages. Maybe 40%, maybe 50%, use your judgment." The Division objected, and the trial court admonished the jury that its instructions on the law should guide the

jury and that the jury must consider each award for each plaintiff separately. The trial court later instructed the jury to determine the damages separately. Third, the Division argues that Plaintiffs' counsel impermissibly interjected himself and his wife into Plaintiffs' shoes and then vouched that Plaintiff had acted reasonably.

■ 33. We note first that counsel have considerable latitude in closing arguments. *See McDowell v. Napolitano*, 119 N.M. 696, 702, 895 P.2d 218, 224 (1995). Next, these remarks will generally not result in reversible error where counsel does not assert personal knowledge, vouch for his client's credibility or belittle or demean opposing parties or their witnesses. *See id.* We find none of the factors present here. Finally, while acknowledging that the personal remarks were potentially improper, the trial court determined that, in view of the entire argument, the statements did not result in harm or prejudice to the Division. Reviewing the record in this matter, we cannot say the trial court abused its discretion. *See Abeyta*, 120 N.M. at 247, 901 P.2d at 178; *Grammer*, 93 N.M. at 693, 604 P.2d at 831.

34. Based on the instructions to the jury, the curative statement made by Plaintiffs' counsel, and the jury's answer to special interrogatories apportioning liability, we cannot say that the trial court abused its discretion in denying a mistrial. *See State v. Rowell*, 119 N.M. 710, 719, 895 P.2d 232, 241 (Ct.App.) (not every misstatement made during closing argument mandates as a new trial), *rev'd on other grounds*, 121 N.M. 111, 908 P.2d 1379 (1995).

35. In addition to the arguments noted above, the Division argues that Plaintiffs' counsel made improper closing remarks by referring to his wife as a former police officer and the fact that he and his wife had just learned she was pregnant with triplets. As pointed out by Plaintiffs, the Division did not object to the comments in a timely fashion and, therefore, these arguments are not properly preserved for appeal. *See Rowell*, 119 N.M. at 719, 895 P.2d at 241 (in order to preserve error a timely objection must be

made in order to allow trial court to correct problem).

### Refused Jury Instructions

36. The Division argues that forty non-UJIs tendered by it were improperly refused. Plaintiffs respond that the refused jury instructions improperly instructed the jury in matters of statutory construction, concerned issues not relevant to the case, incorrectly stated the law, were misleading, improperly submitted to the jury purely legal issues of immunity under the Tort Claims Act, or concerned matters already covered by other instructions.

 37. The burden is on the Division to show that the trial court's refusal was erroneous and created prejudice. *See Jewell v. Seidenberg*, 82 N.M. 120, 124, 477 P.2d 296, 300 (1970). We consider whether all of the instructions, when read together, fairly present the issues and applicable law. *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 26, 766 P.2d 280, 286 (1988), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989). A trial court properly exercises its discretion to refuse an instruction when the instruction (1) does not supply needed guidance to the jury; (2) presents an abstract proposition of law not applicable to the issues in the case; (3) is properly the subject of argument for counsel; (4) is erroneously or inaccurately drafted; (5) is not impartial or contains hypothesized facts; or (6) contains dictionary definitions of terms that are used in their ordinary sense. *See id.* at 28, 766 P.2d at 288; *Mireles v. Broderick*, 117 N.M. 445, 450, 872 P.2d 863, 868 (1994); *State v. Gonzales*, 112 N.M. 544, 553, 817 P.2d 1186, 1195 (1991); *Kinney v. Luther*, 97 N.M. 475, 476, 641 P.2d 506, 507 (1982); *Gallegos v. McKee*, 69 N.M. 443, 448, 367 P.2d 934, 938 (1962). Without belaboring the point and addressing each of the forty refused instructions, we agree with Plaintiffs that the refused instructions fall into one or another of the categories mentioned above. We perceive no abuse of the trial court's discretion in refusing the Division's instructions. Conversely, the instructions which were given to the jury fairly presented the issues and law applicable to the case.

### Motion for New Trial/Motion for Remittitur

 38. The Division claims that the damage award of $150,000 to Martha's parents was excessive, requiring remittitur or a new trial. The parties stipulated that Martha sustained approximately $42,000 in medical expenses for which her parents were liable. In addition, there was testimony concerning $20,000 of future medical care for ankle surgery. The Division does not contest this evidence. The Division's basic argument is that any verdict in excess of $62,000 is of necessity excessive. The Division does not explicitly argue, much less demonstrate, that the amount awarded is the result of passion or prejudice or other improper influence. *See Hall v. Stiles*, 57 N.M. 281, 285, 258 P.2d 386, 389 (1953). In addition, the Division again fails to provide complete reference to the evidence or to the jury instructions outlining the type of damages the jury could award Martha's parents.

39. In addition to damages for medical expense, jury instruction 32 allowed damages to Martha's parents for "[t]he reasonable value of necessary nonmedical expenses which have been required as a result of Martha's injuries and the present cash value of such nonmedical expenses reasonably certain to be required in the future until Martha reaches age 18." Plaintiffs introduced evidence that Martha's parents provided home health care for several months after the accident, intensive tutoring while their child was out of school during the rest of second grade and tutoring through the six years since the accident. Plaintiffs also introduced evidence that the child would probably need continued help as she gets older. This evidence, combined with the testimony concerning $62,000 of medical expense, provides substantial support for the jury's award to Martha's parents.

40. The Division appears to argue that Plaintiffs cannot recover damages for nonmedical expenses because such expenses were not included in the complaint. The evidence in support of non-medical expenses was introduced at trial, apparently without objection. *See Martinez v. Zia Co.*, 100

N.M. 8, 10, 664 P.2d 1021, 1023 (Ct.App.1983) (issues tried by implied consent of the parties will be treated as if they were raised in the pleadings). The Division acquiesced in allowing the issue of non-medical expenses to be presented to the jury and the jury verdict is within reason.

41. The Division has failed to show that the trial court's refusal to grant its motions was a "clear and unmistakable abuse of discretion." *See State v. Griffin,* 117 N.M. 745, 749, 877 P.2d 551, 555 (1994).

42. We affirm on all issues raised in the appeal. We dismiss the cross-appeal.

43. IT IS SO ORDERED.

APODACA and BOSSON, JJ., concur.