This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36435

BOARD OF DIRECTORS OF FOUR
DIRECTIONS PARK CONDOMINIUMS
HOMEOWNERS ASSOCIATION, INC.,
a New Mexico nonprofit corporation,

Plaintiff-Appellee,

v.

CASITA DE LAS FLORES, LLC,
a New Mexico limited liability company,
ASSAF REZONI, f/k/a ASSAF REZNICK,
and MICAL REZONI,

Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Jeff F. McElroy, District Judge

Walcott, Henry & Winston, P.C.
Donald A. Walcott
Santa Fe, NM

for Appellee

Chappell Law Firm, P.A.
Bill Chappell, Jr.
James B. Boone
Albuquerque, NM

for Appellants

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** Casita de las Flores, LLC (Casita) and Assaf and Mical Rezoni (the Rezonis) (collectively, Defendants) appeal from the district court's judgment for assessments in favor of the Four Direction Park Condominium Homeowners Association's Board of Directors (Plaintiff), as well as the district court's order awarding attorney fees and costs in favor of Plaintiff. On appeal, Defendants raise three challenges to the district court's judgment. First, Defendants claim that the district court's findings of fact related to their obligation to pay assessments are not supported by substantial evidence because those findings, as well as the district court's related conclusions of law, are contrary to the New Mexico Condominium Act and the Amended and Restated Declaration for the Association. Second, Defendants contend that the district court erred when it awarded attorney fees in an amount over four times the amount of the judgment. Third, Defendants argue that the district court erred when it awarded costs in favor of Plaintiff, including double the costs pursuant to Rule 1-068(A) NMRA. We affirm.

## BACKGROUND

**{2}** Four Directions, LLC (the LLC), developed the Four Directions Park Condominiums (the Condominiums) through their limited liability corporation, in 2002. The Rezonis were the sole members of the LLC. As part of the development, the LLC prepared and filed the original condominium declaration for the Condominiums (the Original Declaration), which created the Four Directions Park Condominiums Homeowners' Association (the Association). The Original Declaration recognized twelve condominium units in the Association and gave the Association the power to assess owners of condominium units for payment of all costs for maintenance and upkeep of the condominiums as well as other common area expenses. The Original Declaration provided that Plaintiff was to calculate the assessments annually, allocating costs for both maintenance and common area expenses to the owner of each unit in proportion to the approximate area of each unit.

**{3}** In 2006 Assaf Rezoni, as managing member of the LLC prepared and filed an amendment to the Original Declaration (the 2006 Amendment), adding a thirteenth studio unit (the Studio Unit) to the Association. The 2006 Amendment provided that the owner of the Studio Unit "shall have voting rights and pay assessment fees in proportion as the area of [t]he Studio [Unit] bears to the total area of the [u]nits[,]" but did not otherwise change the terms of the Original Declaration. In 2008 the Association unanimously passed a resolution (the 2008 Resolution) proposed by Assaf Rezoni, the Association's then-president, changing the manner in which assessments were calculated for the common areas such that each unit would be assessed an equal 1/13th share of the common area expenses.

**{4}** In 2010 Plaintiff and Rezonis were involved in separate litigation over the Studio Unit that resulted in a settlement agreement (the 2011 Settlement Agreement) that required the Rezonis to purchase the Studio Unit, exempted the owner of the Studio Unit from the payment of maintenance assessments, but required the continued payment for assessments for common area expenses. The Rezonis owned the Studio Unit from September 2011 until October 2012, when they conveyed it to Casita, another

limited liability company owned solely by the Rezonis. In 2014 Plaintiff prepared and filed an Amended and Restated Declaration (the 2014 Amendment), which included the terms of the 2011 Settlement Agreement but referenced no other changes to the manner in which assessments were to be assessed. In 2015 Plaintiff sued the Rezonis for unpaid common area assessments from 2011 to 2012 and Casita for unpaid common area assessments from 2012 to 2014, all related to the Studio Unit. The case was tried in 2017, and the district court found in favor of Plaintiff, entering judgment against Defendants for their respective unpaid assessments and awarding Plaintiff its attorney fees and costs. This appeal followed.

## DISCUSSION

### I.     Association Assessments

{5}     While somewhat difficult to parse out of their briefing, Defendants appear to make three challenges to the district court's findings and conclusions related to their obligation to pay the Association assessments. First, Defendants argue the district court's finding that the Studio Unit was a part of the Association such that the Rezonis were subject to the common area assessments as owners of the Studio Unit is not supported by substantial evidence. Second, Defendants argue the district court erred in finding that the 2008 Resolution and course of conduct of the parties required Defendants to pay 1/13th of the common area expenses because the Original Declaration was never amended to reflect the 1/13th assessment of the common area expenses, contrary to the Condominium Act, NMSA 1978, Sections 47-7A-1 to 7D-20 (1982, as amended through 2012). Third, Defendants argue the district court erred in failing to consider specific exhibits and the stipulation of the parties that "Defendants [did not] receive[] notice of annual meetings or a proposed budget from Plaintiff between 2001 and 2015[,]" which we understand Defendants contend relieved them of their obligations to pay assessments prior to March 31, 2015.

### Standard of Review

{6}     As these arguments present mixed questions of law and fact, "we use the substantial evidence standard for review of the facts and then conduct a de novo review of the trial court's application of law to those facts." *Allen v. Timberlake Ranch Landowners Ass'n*, 2005-NMCA-115, ¶ 13, 138 N.M. 318, 119 P.2d 743. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658 (internal quotation marks and citation omitted). "In reviewing a sufficiency of the evidence claim, this Court views the evidence in a light most favorable to the prevailing party and disregards any inferences and evidence to the contrary." *Charles v. Regents of N.M. State Univ.*, 2011-NMCA-057, ¶ 15, 150 N.M. 17, 256 P.3d 29 (alteration, internal quotation marks, and citation omitted). "We will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *N.M. Taxation & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (alteration, internal quotation marks, and citation omitted).

**{7}**     Before we consider Defendants' specific arguments challenging the district court's findings and conclusions, we note that Defendants argue that we should give the district court less deference than is required under our substantial evidence standard of review because they contend the district court adopted Plaintiff's proposed findings of fact verbatim. Defendants direct this court to cases where we gave less deference to the findings of district courts that copied proposed findings of fact proposed by one of the parties verbatim. However, in those cases, we measured the amount of deference we gave to the district courts only upon a verbatim, or effectively verbatim adoption of extensive requested findings of fact. *See Bernier v. Bernier*, 2013-NMCA-074, ¶ 15 n.4, 305 P.3d 978 ("The practice of full scale verbatim adoption of extensive requested findings of fact and requested conclusions of law of the prevailing party, especially in complex cases, can cause this Court on appeal to grant less deference to a court's findings of fact and conclusions of law than is otherwise accorded."); *see also Los Vigiles Land Grant v. Rebar Haygood Ranch, LLC*, 2014-NMCA-017, ¶ 2, 317 P.3d 842 ("[W]e think it appropriate to repeat our continuing concern about the practice of some [district] courts of adopting, verbatim, all or virtually all of a prevailing party's extensive requested findings of fact and conclusions of law in complex cases. . . . This Court looks askance at wholesale verbatim adoption of the prevailing party's extensive requested findings of fact and conclusions of law.") However, in this case, the district court's final order, containing its findings of fact and conclusions of law was not a verbatim, wholesale copy of the Plaintiff's proposed finding of fact. The district court rejected a significant number of the proposed findings offered by Plaintiff and altered and amended many others. The district court also added several additional findings that were not proposed by Plaintiff. Therefore, we reject Defendant's argument that we should limit our deference to the district court's findings of fact and we proceed with our analysis, reviewing the sufficiency of the evidence in a light most favorable to Plaintiff, disregarding any inferences and evidence to the contrary. *See Casias Trucking*, 2014-NMCA-099, ¶ 20.

**Association Membership of the Studio Unit**

**{8}**     Defendants first argue the district court erred in concluding that the Studio Unit was a member of the Association such that Defendants were subject to the common area assessments during their respective terms of ownership. Defendants point to testimony and documentary evidence that the Studio Unit was not treated as a unit of the Association and that Defendants never received notices of any annual meetings between 2011 and 2014. Because the Studio Unit was not treated as a unit of the Association, Defendants argue, they cannot be made to pay assessments for that unit.

**{9}**     The Original Declaration reserved the LLC's right to add additional condominium units "without the consent of any Unit Owner or Mortgagee," provided the LLC complied with Section 47-7B-10, which requires the declarant to "prepare, execute and record an amendment to the declaration and comply with . . . [Section 47-7B-9] of the Condominium Act." Section 47-7B-9(F) imposes an obligation on a condominium developer exercising a development right to "record either new plats and plans necessary to conform to the requirements of Subsections A, B and D of this section or

new certifications of plats and plans previously recorded if those plats and plans otherwise conform to the requirements of those subsections."

**{10}** Here, the district court found that the 2006 Amendment sought to "create the Studio Unit as the 13th unit of the Four Direction [C]ondominiums . . . [and] that the Studio Unit has been a part of the Association at all times since the filing of the [2006] Amendment to the Original Declaration. In the 2006 Amendment prepared and filed by Assaf Rezoni, the LLC "exercise[d] its right to add one more additional Unit (designated as 'The Studio')." The 2006 Amendment further provided,

> Except to the extent expressly modified below, all the terms and conditions of the Original Declaration shall apply with full force and effect, to all the units, including the new Unit. *The Owner of the Studio shall have voting rights and pay assessment fees in proportion as the area of the Studio bears to the total area of all units.* Section 2.2 of the [O]riginal Declaration [establishing 12 units] is hereby amended accordingly.

(Emphasis added.) The 2006 Amendment was recorded with the Taos County Clerk and attached an amended plat of the condominium.

**{11}** Defendants do not argue that the 2006 Amendment failed to comply with the statutory requirements to add a unit to the condominium and we hold that substantial evidence existed to support the district court's conclusion "that the Studio Unit has been a part of the Association at all times since the filing of the [2006] Amendment to the Original Declaration." Instead, Defendants contend that the Studio Unit was not treated as a member of the Association, pointing to the fact that Defendants did not receive bills for assessments or notices of any annual meetings or a proposed budget between 2011 and 2014, and that the Association's minutes refer to twelve units, rather than thirteen. Defendants, however, fail to provide us with any authority to explain how references in meeting minutes or the failure to receive notices of annual meetings or proposed budgets remove the Studio Unit as a unit of the condominium after the statutory requirements to include it have been satisfied or how they are otherwise relieved of the obligation to pay common area expenses. "We will not review unclear arguments, or guess at what a party's arguments might be." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (alteration, internal quotation marks, and citation omitted). "To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them." *Id.* "This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Id.* We affirm the district court's finding that the Studio Unit was a unit of the condominium and therefore a member of the Association from 2006, on.

**Fractional vs. Proportional Calculation of Assessments**

**{12}** Next, Defendants argue that even if the Studio Unit is a member of the Association and subject to the Original Declaration and its subsequent amendments, the district court's finding that the Defendants must pay 1/13th of the common area expenses was erroneous. Defendants argue that the district court erred when it concluded "that the conflict between the terms of the Original and Amended [D]eclarations, the Settlement Agreement and the terms of the April 2008 Resolution create an ambiguity regarding the proper calculation methodology for common element assessments." Instead, Defendants claim the district court ignored the provisions of the Act and the 2014 Amendment, which they claim required Defendants to pay assessments based on the proportionate area of each unit.

**Ambiguity in the Manner in Which Common Area Expenses Were to be Assessed**

**{13}** The Condominium Act requires that a "unit owners' association shall be organized no later than the date the first unit in the condominium is conveyed. The membership of the association at all times shall consist exclusively of all the unit owners." Section 47-7C-1. The Act further provides that the unit owners' association "is responsible for maintenance, repair and replacement of the common elements[.]" Section 47-7C-7(A). To pay for the maintenance, repair, and replacement of common elements, the unit owners' associations shall ensure that "all common expenses shall be assessed against all the units in accordance with the allocations set forth in the declaration [of the unit owners' association]." Section 47-7C-15(B).

**{14}** In this case, the Original Declaration empowered the Association to assess units for maintenance and upkeep of common areas, calculating the assessment for each unit in proportion to the approximate area for each unit. The 2006 Amendment added the Studio Unit, clarified that "[t]he [o]wner of the Studio shall . . . pay assessment fees in proportion as the area of [t]he Studio bears to the total area of all [u]nits[,]" and confirmed, "[e]xcept as hereinabove specifically amended, all provisions of the Original Declaration are hereby affirmed." In 2008 Assaf Rezoni, as president of the Association, offered, and the Association unanimously passed, the 2008 Resolution to change the assessment formula for common area expenses to an equal 1/13th share of common area expenses for each unit. The Association, however, failed to amend its declaration to incorporate the 2008 Resolution. Nonetheless, upon passage of the 2008 Resolution, the Association implemented the newly-adopted assessment formula for the common area expenses, assessing each unit owner 1/13th of those expenses.

**{15}** The Association subsequently adopted the 2014 Amendment, which, among other things, memorialized the terms of the 2011 Settlement Agreement and restated the Association's declarations. Article V of the 2014 Amendment entitled, "Assessments for Insurance, Maintenance and Taxes[,]" provides:

> The owner of the Studio Unit shall not be required to contribute to the maintenance fund for the maintenance of the other buildings in the Condominium (the "building common elements"), but shall contribute for the maintenance of the other common elements and limited common

elements (the "grounds common elements") for which the Association is responsible pursuant to the provisions of this Declaration.

Nothing in the Amended and Restated Declaration explains the manner in which the Association was to calculate the assessments for the common areas. Defendants point us to a chart attached as Exhibit 2 to the 2014 Amendment, setting out the percentage ownership interest of each of the units in the Association and listing Defendants' ownership interest as three percent, arguing that the chart "specifically state[s] the basis for the assessments." However, nothing in the chart attached as Exhibit 2 references common area expenses or relates the percentage ownership set out in the chart to the calculation of those expenses. Indeed, none of the provisions of the 2014 Amendment explain how those expenses are to be calculated. Thus, we are left with a 2014 Amendment that purports to restate the declaration of the Association, but is devoid of any express guidance as to how common area expenses are to be calculated and assessed against unit owners. Under the circumstances, the district court did not err in determining the Association's "calculation methodology for common [area] assessments" was ambiguous.

**{16}** Our law is clear that "restrictive covenants are contracts and are to be interpreted under the rules of contract interpretation." *Eldorado Cmty. Improvement Ass'n, Inc. v. Billings*, 2016-NMCA-057, ¶ 13, 374 P.3d 737. Construing those covenants, we are "to give effect to the intention of the parties as shown by the language of the whole instrument, considered with the circumstances surrounding the transaction, and the object of the parties in making the restrictions." *Allen*, 2005-NMCA-115, ¶ 14 (internal quotation marks and citation omitted). An ambiguity in a restrictive covenant exists "when provisions are reasonably and fairly susceptible to different constructions." *Eldorado Cmty. Improvment Ass'n, Inc.*, 2016-NMCA-057, ¶ 22. "The [district] court is no longer restricted to the bare words of the agreement in interpreting the intent of the parties to a contract, but may also consider the context in which the agreement was made to determine whether the party's words are ambiguous." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 29, 314 P.3d 688 (internal quotation marks and citation omitted). "[I]n determining whether a term or expression to which the parties have agreed to is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and any relevant usage of trade, course of dealing, and course of performance." *Id.* (alteration, internal quotation marks, and citation omitted) "Whether contractual terms are ambiguous is a question of law, subject to de novo review." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 9, 299 P.3d 844.

**{17}** Here, the absence of any language explaining the manner in which common area expenses were to be calculated renders the 2014 Amendment "reasonably and fairly susceptible to different constructions." *Eldorado Cmty. Improvment Ass'n, Inc.*, 2016-NMCA-057, ¶ 22. Turning to the "circumstances surrounding the making of the contract and any relevant usage of trade, course of dealing, and course of performance[,]" *Benz*, 2013-NMCA-111, ¶ 29, we conclude that sufficient evidence was presented at trial to support the district court's conclusion that the parties intended to assess the common area expenses based on equal 1/13th shares. The district court heard evidence that

Assaf Rezoni, the then-president of the Association, proposed the 2008 Resolution to change the common area assessment calculation to a fractional interest, that Plaintiff calculated the common area assessment based on that Resolution from that point on and that Defendants never objected to the fractional calculation until this suit was filed. This evidence is sufficient to support the district court's conclusion that the parties intended, from 2008, on, to calculate common area assessments on a 1/13th fractional basis and we affirm the district court on this point.

**{18}** Defendants complain that "[t]he [d]istrict [c]ourt made no reference to the numerous exhibits introduced by. . . Defendants other than two conveyance documents[,]" which we interpret as an invitation to reweigh the evidence. Our standard of review, however, requires that we "resolve all conflicts in the evidence in favor of th[e] decision and . . . disregard evidence to the contrary, we defer to the trial court in regard to the weighing of conflicting evidence[.]" *Tartaglia v. Hodges*, 2000-NMCA-080, ¶ 27, 129 N.M. 497, 10 P.3d 176. Defendants have failed to explain which of the numerous exhibits it claims the district court erroneously failed to reference and why we should depart from our standard of review. Absent such an explanation, we decline to review this argument further. *See Elane Photography*, 2013-NMSC-040, ¶ 70 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted.)).

**{19}** Defendants also contend that the Association violated its statutory obligation of good faith under Section 47-7A-13 when it "singled out Defendants who correctly objected to the incorrect assessment against them." As we have concluded that the assessment against Defendants was proper, we find no violation based on the Association's demand that Defendants pay a 1/13th share of the common area expenses. Defendants have failed to explain how they were otherwise "singled out" and we decline to review their unclear argument further. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). We affirm the district court's conclusion that the parties intended to assess common area expenses on a fractional basis.

## II.    Plaintiff's Attorney Fees

**{20}** Defendants argue the district court abused its discretion in awarding attorney fees to Plaintiff because (1) Defendants should have been the prevailing party, (2) the district court disregarded the law because insufficient evidence supported the amount of attorney fees awarded, and (3) the amount awarded was unreasonable.

**{21}** The Condominium Act provides that a judgment or decree in any action to foreclose a lien for assessments "may include costs and reasonable attorney[] fees for the prevailing party." Section 47-7C-16(F). On appeal, "we review an award of attorney fees for an abuse of discretion." *Sonida, LLC v. Spoverlook, LLC*, 2016-NMCA-026, ¶ 8, 367 P.3d 854. "The test is not what we would have done had we heard the fee request, but whether the trial court's decision was clearly against the logic and effect of the facts

and circumstances before the court." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 6, 140 N.M. 879, 149 P.3d 976 (internal quotation marks and citation omitted). Although the award of attorney fees is discretionary, "the exercise of that discretion must be reasonable when measured against objective standards and criteria[,]" *Lenz v. Chalamidas*, 1989-NMSC-067, ¶ 19, 109 N.M. 113, 782 P.2d 85, which include:

> (1) the time and labor required—the novelty and difficulty of the questions involved and skill required; (2) the fee customarily charged in the locality for similar services; (3) the amount involved and the results obtained; (4) the time limitations imposed by the client or by the circumstances; and (5) the experience, reputation and ability of the lawyer or lawyers performing the services.

*Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 13, 287 P.3d 318.

**{22}** Because we have determined that Plaintiff was the prevailing party, we need only address Defendant's second and third subarguments. *See Dunleavy v. Miller*, 1993-NMSC-059, ¶ 28, 116 N.M. 353, 862 P.2d 1212 ("[T]he prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment.").

**Sufficient Evidence Supported Attorney Fees Award**

**{23}** Defendants argue that the district court disregarded the law by failing to consider any evidence of the reasonable hourly rate in the area and failing to distinguish "fees incurred between prosecution of the claim and any counterclaim or defense to the claim" asserted by Defendants.

**{24}** Defendants contend "there must be evidence of what the reasonable hourly rate is in the area where the case has proceeded." In support of Plaintiff's motion, Plaintiff's counsel submitted an affidavit stating that his hourly rate was $250 per hour, which, he explains, had been his standard rate for the past six years. The affidavit further indicates that Plaintiff's counsel has previously been awarded fees at the $250 per hour rate. Plaintiff's motion indicates that Plaintiff's counsel has tried cases in the Eighth Judicial District, as well as several surrounding districts for the past twenty-one years. The district court, "familiar with the case and the normal rates in the area, may [also] rely on [its] own knowledge to supplement the evidence regarding a reasonable hourly rate." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 65. Based on this information, the district court found that "the hourly rates of the attorneys [were] reasonable under the circumstances." Taking these facts into consideration, we cannot conclude that the district court failed to consider evidence of the reasonable hourly rate in the area, thereby abusing its discretion when it awarded Plaintiff attorney fees at the rates requested in Plaintiff's motion.

**{25}** Defendants claim that the district court erred in its award of attorney fees to Plaintiff by failing to distinguish "fees incurred between prosecution of the claim," "any defense to the claim, and the counterclaim asserted by Defendants." In support of their claim that "the failure to distinguish between fees incurred between prosecution of the claim and any counterclaim or defense to the claim requires attorney[] fees to be reduced[,]" Defendants cite to *Thompson Drilling, Inc. v. Romig*, 1987-NMSC-039, ¶ 22, 736 P.2d 979, 105 N.M. 701. While Defendants reference a "counterclaim asserted by Defendants[,]" we have been unable to locate any counterclaim raised by Defendants, and Defendants do not point us to any counterclaim which would necessitate that Plaintiff distinguish between attorney fees related to its claim and Defendants' counterclaim. We find no abuse of discretion by the district court on this charge.

**The Attorney Fees Were Reasonable**

**{26}** Defendants also contend that the amount of attorney fees awarded was unreasonable, claiming that Plaintiff's actions drove up the cost of the litigation and Plaintiff's time entries were unreasonable. Defendants also take issue with the district court's findings that Defendants' litigation tactics were "aggressive" and the Rezonis' motives were "vindictive" and intended to bankrupt Plaintiff. In considering whether the district court abused its discretion, we note that the record proper for this case consists of five volumes constituting more than 1100 pages. The trial on the merits took place over two days and Defendants introduced 100 exhibits totaling 261 pages and Plaintiff introduced twenty-one exhibits totaling 103 pages. Our standard of review requires that we disregard any evidence contrary to the decision of the district court and defer to the district court's weighing of the evidence. *See Casias Trucking*, 2014-NMCA-099, ¶ 20 (explaining that "[w]e will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder"); *Charles*, 2011-NMCA-057, ¶ 15 (concluding that we disregard any evidence to the contrary). In light of the significant record in this case, we cannot conclude that the district court abused its discretion with its award of attorney fees to Plaintiff.

**{27}** To the extent Defendants argue that the award of attorney fees should be vacated because the district court demonstrated bias that rose to the level of disqualification, we are unpersuaded. In particular, Defendants point to the district court's finding in its order awarding attorney fees that Assaf Rezoni's motives were "vindictive and appeared to be designed to bankrupt a small homeowner association." "In order to be disqualifying, the judicial bias or prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [their] participation in the case." *Dawley v. La Puerta Architechural Antiques, Inc.*, 2003-NMCA-029, ¶ 39, 133 N.M. 389, 62 P.3d 1271. In this case, Defendants do not point to any "extrajudicial sources" on which the district court based its decision. We therefore decline to review this argument further. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that "[w]e will not review unclear arguments, or guess at what [a party's] argument might be[,]" and that we decline to review an argument unsupported with citations to the record).

## III.    Plaintiff's Costs

**{28}**    We now turn to Defendants' final argument that the district court abused its discretion in awarding costs to Plaintiff. Following the trial, the district court awarded Plaintiff costs for filing fees, fees for transcripts of the hearings, and costs of various depositions under Rule 1-054 NMRA. Additionally, the district court awarded double costs under Rule 1-068. Defendants argue: (1) that the district court abused its discretion in awarding the costs of trial transcripts because there had been a stipulated order prior to trial that Plaintiff would be responsible for the costs of the trial transcript; (2) that the deposition costs awarded were for depositions not used at trial or for a successful motion for summary judgment; (3) that the doubling of costs under Rule 1-068 was erroneous; and (4) the district court abused its discretion by prorating the payment of Plaintiff's costs, as well as their attorney fees between the Rezonis and Casita.

**{29}**    As we previously acknowledged, the Condominium Act permits a judgment or decree in any action brought to foreclose a lien for assessments "may include costs and reasonable attorney[] fees for the prevailing party." Section 47-7C-16(F). Additionally, Rule 1-054(D) allows the prevailing party to recover costs for, among other things, filing fees, fees for transcripts of hearings, and, subject to certain limitations, the costs of depositions. Generally, the district court "has sound discretion to award, deny, and/or apportion costs under Rule 1-054." *Eskew v. Nat'l Farmers Union Ins. Co.*, 2000-NMCA-093, ¶ 7, 129 N.M. 667, 11 P.3d 1229. "[W]e review a discretionary decision for an abuse of discretion and reverse only if it is contrary to logic and reason." *Rio Grande Sun*, 2012-NMCA-091, ¶ 10 (alteration, internal quotation marks, and citation omitted).

### Trial Transcripts

**{30}**    Defendants argue that the district court abused its discretion in awarding the cost of trial transcripts because the district court entered a stipulated order prior to trial providing that "Defendants[] may have a [c]ourt [r]eporter present to stenographically transcribe the trial[,]" that "Defendants[] shall be solely responsible for the cost of the [c]ourt [r]eporter[,]" and that "[i]f Plaintiff desires a copy of the transcript, Plaintiff will be responsible for such cost." The stipulated order addresses Defendants' apparent request to have a court reporter stenographically transcribe the trial and the logistics associated with the payment for that transcription prior to any decision on the merits of the case and the district court's consideration of any request for costs and attorney fees by the prevailing party, as permitted by Rule 1-054. Initially, we note that the order appears to be a ministerial order to address the coordination of Defendants' request to use a court reporter, including the parties' responsibility for the up-front payment for the court reporter's services. Nothing in the order precludes the district court from reassessing its decision in light of the outcome of the litigation and Defendants have failed to provide us with any authority to explain why the district court was not permitted to reconsider this prior ruling. *Cf. Melnick v. State Farm Mut. Auto Ins. Co.*, 1988-NMSC-012, ¶ 5, 106 N.M. 726, 749 P.2d 1105 ("A trial court has the inherent authority to reconsider its interlocutory orders[.]") Absent authority to support its claim that the

district court erred when it reconsidered its order, we assume there is none. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority.") Furthermore, it is within the district court's discretion to award payment of those costs after trial to the prevailing party under Rule 1-054 and the district court's decision to do so is not contrary to logic and reason. We find no abuse of discretion in the district court's award of the cost of the trial transcripts.

**Depositions**

**{31}**   On appeal, Defendants challenge Plaintiff's entitlement to recover the costs of depositions, arguing that Plaintiff did not use those depositions at trial or in successful support of a motion for summary judgment, reiterating the argument they made to the district court. Rule 1-054(D)(2)(e)(iii), however, also provides for the recovery of deposition fees "when the [district] court determines the deposition was reasonably necessary to the litigation[.]" At the hearing on Plaintiff's costs motion, the district court questioned Defendants counsel:

> If [P]laintiffs anticipated they would be called at trial and you guys subpoenaed them, . . . wouldn't it be reasonably necessary to think they needed those transcripts in the event that they testified contrary to their deposition—for purposes of their cross-examination? As it turned out they didn't, but wouldn't it have been malpractice for them not have a transcript so if they ended up going rogue on them that they couldn't bring them back in based what their deposition testimony was?

The district court then awarded Plaintiff, among other costs, the costs for the depositions. The district court considered Defendants' argument and implicit in its questioning at the hearing is its conclusion that the depositions were "reasonably necessary to the litigation[.]" Rule 1-054(D)(2)(e)(iii) We cannot conclude the district court abused its discretion in awarding the Plaintiff its deposition costs.

**Double Costs Under Rule 1-068.**

**{32}**   Defendants argue that the doubling of costs under Rule 1-068 was erroneous because: (1) Plaintiff did not provide evidence of the offer of judgment to the district court; (2) Plaintiff's offer of judgment was improper because it was not apportioned among the various Defendants; and (3) the judgment finally obtained by Plaintiff was not more than offer of judgment. Rule 1-068 states that, in pertinent part:

> If an offer of settlement made by a claimant is not accepted and the judgment finally obtained by the claimant is more favorable than the offer, the defending party must pay the claimant's costs, excluding attorney[] fees, including double the amount of costs incurred after the making of the offer. If an offer of settlement made by a defending party is not accepted

and the judgment finally obtained by the claimant is not more favorable than the offer, the claimant must pay the costs, excluding attorney[] fees, incurred by the defending party after the making of the offer and shall not recover costs incurred thereafter.

An award of costs is a discretionary decision, however, "a discretionary decision based on a misapprehension of the law is an abuse of discretion that must be reviewed de novo." *Rio Grande Sun*, 2012-NMCA-091, ¶ 10 (alteration, internal quotation marks, and citation omitted).

**{33}** In this case, Plaintiff made an offer of settlement on October 8, 2015, to Defendants for $14,000, "inclusive of all monies due, attorney[] fees, costs, and pre-judgment interest." Defendants rejected that offer. Following the offer, costs rose by an amount of $3,632.05. After trial, the district court found that the award finally obtained by Plaintiff, including the judgment of $1,829.46 in unpaid assessments and interest against the Rezonis, the judgment of $9,418.34 in unpaid assessments and interest against Casita, costs of $3,898.43, and attorney fees of $53,717.16, exceeded the offer of settlement. Based on its findings, the district court doubled the post-offer costs.

**{34}** Defendants argue that "no evidence of the offer [of settlement] was provided to the [d]istrict [c]ourt, [and c]onsequently, no doubling of costs should have been allowed." Importantly, Defendants do not argue that they did not received Plaintiff's offer of settlement. Instead, they argue that no "evidence" of the offer was presented to the district court. While this argument is not entirely clear, we note that Defendants' argument to the district court was based on the fact that the offer of settlement had not been filed with the court clerk and was not part of the court record. Defendants cite no authority to support their claim that the doubling of costs is conditioned on the filing of the offer with the clerk of the court or otherwise providing "evidence" of the offer to the district court when Defendants do not deny having received the offer. "Where a party cites no authority to support an argument, we may assume no such authority exists." *See Curry*, 2014-NMCA-031, ¶ 28. We decline to consider Defendants' argument further.

**{35}** Next, Defendants argue that Plaintiffs are not entitled to recover double its costs because the Plaintiff's offer of judgment was deficient, as it was a single, unapportioned offer to all Defendants. In support of its argument, Defendants point to *Gallegos v. State Board of Education*, 1997-NMCA-040, ¶ 19, 123 N.M. 362, 940 P.2d 468. *Gallegos*, however, is inapplicable. Indeed, the *Gallegos* Court did not interpret Rule 1-068 or address it in any meaningful way. Instead, it rejected the defendant's interpretation of Section 41-4-17(B) of the Tort Claims Act, criticizing the defendant's expansive interpretation of the preclusive effect of Section 41-4-17(B) because it would force a plaintiff to refuse a reasonable offer of judgment from a defendant with a small portion of liability to protect the plaintiff's claims against the defendants with greater liability. *Gallegos*, 1997-NMCA-040, ¶ 19. *Gallegos* does not assist Defendants.

**{36}** As further support for their argument, Defendants also cite two out-of-state cases holding that "when a lack of apportionment between offerees prevents them from evaluating the offer independently, the joint offer is unenforceable." *Allstate Indem. Co. v. Hingson*, 808 So.2d 197, 198 (Fla. 2002) (internal quotation marks and citation omitted); *see also Duke v. Cochise Cty.*, 938 P.2d 84 (Ariz. Ct. App. 1996) (same), *superseded by rule as stated in Boyle v. Ford Motor Co.*, 334 P.3d 219 (Ariz. Ct. App. 2014). These cases are also of no assistance to Defendants. In this case, Defendants were aware of the apportionment of Plaintiff's claim of damages. Three months before submitting its offer of settlement, Plaintiff filed its motion for summary judgment against Defendants, claiming that Rezonis owed the sum of $1,829.46 for past due association fees, while Casita owed $4,897.26 in past due association dues, supporting its claim with the affidavit of its bookkeeper, Cristy Hersley. Plaintiff's motion further claimed that Plaintiff was entitled to collect its costs, "including reasonable attorney[] fees, and interest due on the unpaid amounts." This information, provided just three months before Plaintiff tendered its offer of judgment, was sufficient to allow the Defendants to evaluate the offer of judgment independently. Defendants' argument is unavailing.

**{37}** Defendants also argue that the district court erred by doubling Plaintiff's post-offer costs because the judgment finally obtained by Plaintiff was not more than offer of judgment. Rule 1-068 allows the district court to double post-offer costs if the "judgment finally obtained" was greater than the offer of settlement. In this case, Plaintiff was awarded damages for non-payment of condominium fees in the amount of $9,418.34. Further, Plaintiff incurred $266.38 in costs prior to issuing its offer of settlement to Defendants.[1] Based on the billing statements submitted by Plaintiff's counsel, Plaintiff also incurred pre-offer attorney fees of $11,664.31.48 of the total $53,717.16 in fees awarded. We infer that the district court considered Plaintiff's pre-offer costs and attorney fees in reaching its conclusion that "[t]he final award will exceed [the] $14,000" set out in Plaintiff's offer of settlement. *See, e.g.*, *Dunleavy*, 1993-NMSC-059, ¶ 34 ("A valid Rule [1-068] offer of judgment must compensate the plaintiff for all costs accrued through the making of the offer.") While Defendants argue the judgment finally obtained by Plaintiff was not more than offer of judgment, they fail to explain why we are not permitted to consider Plaintiff's pre-offer costs and fees in our review and we will not consider their argument further. "We will not review unclear arguments, or guess at what [a party's] argument might be." *Headley*, 2005-NMCA-045, ¶ 15; *see also Curry*, 2014-NMCA-031, ¶ 28.

**Apportionment of Fees**

**{38}** Defendants also argue that the district court erred when it apportioned its award of Plaintiff's attorney fees and costs between the Rezonis and Casita based on the percentage of liability for unpaid condominium fees of each. Instead, Defendants argue that the district court was required to "determin[e] the amount . . . for which each non-prevailing party is responsible." Its failure to do so, Defendants contend, renders the Rezonis jointly and severally liable for the debt of Casita, contrary to Section 53-19-13

---

1The district court concluded that Plaintiff incurred a total allowable cost of $3,898.43, $3,632.05 of which was incurred after the offer was made, meaning Plaintiff incurred $266.38 in costs prior to its offer.

NMSA (1993) of the Limited Liability Act. It is, however, within the sound discretion of the district court to apportion these costs and fees. *See Eskew*, 2000-NMCA-093, ¶ 7 ("[A district] court has sound discretion to award, deny, and/or apportion costs under Rule 1-054."). And Defendants have failed to explain how the district court's order apportioning fees between the Rezonis and Casita based on each's percentage of responsibility for unpaid association dues renders the Rezonis personally liable for the debt of Casita. Absent such an explanation, we decline to consider Defendants' argument further. *See Curry*, 2014-NMCA-031, ¶ 28. Seeing nothing in the district court's decision that is contrary to logic and reason, we conclude the district court did not abuse its discretion in apportioning its award of costs and attorney fees between Defendants.

**CONCLUSION**

**{39}**   Based on the foregoing, we affirm.

**{40}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**M. MONICA ZAMORA, Judge Pro Tempore**