The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>October 9, 2024</u>

**No. A-1-CA-40692**

**MARINA HERNANDEZ,**

        Plaintiff-Appellee,

v.

**OUTWEST AUTO CORRAL, LLC**
**and WESTERN SURETY COMPANY,**

        Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Victor S. Lopez, District Court Judge**

Bradley Law Firm, LLC
Joshua Bradley
Albuquerque, NM

Treinen Law Firm, P.C.
Rob Treinen
Albuquerque, NM

for Appellee

Lakins Law Firm, P.C.
Charles N. Lakins
Albuquerque, NM

for Appellants

**OPINION**

**WRAY, Judge.**

{1}      Plaintiff Marina Hernandez and Defendants Outwest Auto Corral, LLC and Western Surety Company (collectively, Defendant), brought claims against each other arising from the sale of a used car. Defendant, a licensed retail automobile dealer, appeals several issues arising before, during, and after trial. We conclude that the district court properly granted partial summary judgment to Plaintiff on the claim arising under the Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019). Under these circumstances, an affidavit from the dealer as to the age and condition of the car was required under Section 57-12-6 and accompanying regulations. Defendant did not provide an affidavit, and the lack of affidavit established a prima facie case that Defendant willfully misrepresented the age or condition of the vehicle, *see id.*, which Defendant did not rebut. For this reason and because the district court did not otherwise err, we affirm.

**BACKGROUND**

{2}      The following background is taken from the undisputed material facts on summary judgment as well as the evidence that was developed at trial. Defendant sold Plaintiff a used car on January 11, 2008. At that time, Plaintiff signed documents titled "Damage Disclosure Statement" and "Rule 12.2.14.14 Inspection Form." We refer to these two documents together as "the provided reports." The parties entered

into a retail installment contract and security agreement (the retail installment contract), which required Plaintiff to make monthly payments. Plaintiff made a partial down payment and took the car on that date, but because an emissions test could not be performed that evening, Defendant waited to transfer title to Plaintiff. On January 31, 2018, Plaintiff reported the vehicle stolen and a few days later, informed Defendant about the theft. Plaintiff paid the remaining portion of the down payment and one installment payment. When law enforcement recovered the car, Plaintiff was not permitted to reclaim it, because title was not in Plaintiff's name. After Plaintiff indicated no desire to have the car back and made no more payments, Defendant transferred title to itself and recovered insurance proceeds from Plaintiff's insurance company. After further investigation, Plaintiff's counsel discovered evidence that before the purchase, Defendant had not properly disclosed damage to the car.

{3} Plaintiff filed a complaint against Defendant and subsequently amended that complaint to include claims for violations of Sections 57-12-2 and 57-12-6 of the UPA. Defendant responded with counterclaims, which eventually included counterclaims for breach of contract and malicious abuse of process. Before trial, the district court dismissed Defendant's counterclaim for malicious abuse of process and granted partial summary judgment to Plaintiff as to liability on the Section 57-12-6 claim. The parties went to trial, again in relevant part, on Plaintiff's claim under

Section 57-12-2(D)(14), (15), and (17) of the UPA and Defendant's counterclaim for breach of contract.

{4} After the parties presented evidence at trial, the district court granted Plaintiff's motion for judgment as a matter of law on Defendant's counterclaim for breach of contract. The jury found for Defendant on Plaintiff's claims and awarded no damages. Posttrial, both parties filed motions for attorney fees and costs arising from the outcomes of the different UPA claims. *See* § 57-12-10(C) (addressing attorney fees under the UPA). The district court denied Defendant's motion, granted Plaintiff's motion, and entered a judgment awarding Plaintiff statutory damages under the UPA as well as attorney fees and costs. Defendant appeals.

**DISCUSSION**

{5} Defendant raises four issues on appeal: (1) partial summary judgment on the Section 57-12-6 claim; (2) judgment as a matter of law on Defendant's breach of contract counterclaim; (3) attorney fees and costs under the UPA; and (4) the pretrial dismissal of Defendant's counterclaim for malicious abuse of process. We begin with the grant of partial summary judgment.

**I.      Partial Summary Judgment**

{6} We review de novo whether the undisputed material facts supported judgment as a matter of law. *See McAlpine v. Zangara Dodge, Inc.*, 2008-NMCA-064, ¶ 17, 144 N.M. 90, 183 P.3d 975; *see also* Rule 1-056(C) NMRA. The district court

concluded that the undisputed material facts established that Section 57-12-6 required Defendant to provide an affidavit, Defendant did not provide an affidavit, and that summary judgment on the Section 57-12-6 claim was justified. Defendant argues that partial summary judgment on the Section 57-12-6 claim was unjustified because a separate, notarized affidavit was not required under the circumstances. To put Defendant's arguments in context, we first examine Section 57-12-6.

{7}     Section 57-12-6 creates a penalty for the willful misrepresentation of the age or condition of a vehicle. Under Section 57-12-6(A),

> [t]he willful misrepresentation of the age or condition of a motor vehicle by any person, including regrooving tires or performing chassis repair, without informing the purchaser of the vehicle that the regrooving or chassis repair has been performed, is an unlawful practice within the meaning of the [UPA], unless the alleged misrepresentation is based wholly on repair of damage, the disclosure of which was not required pursuant to Subsection C of this section. The failure to provide an affidavit pursuant to Subsection B of this section when there has been repair for which disclosure is required shall constitute prima facie evidence of willful misrepresentation.

Section 57-12-6(B), referred to by Section 57-12-6(A), states that "a seller of a motor vehicle shall furnish at the time of sale of a motor vehicle an affidavit that: (1) describes the vehicle; and (2) states to the best of the seller's knowledge whether there has been an alteration or chassis repair due to wreck damage." Our Supreme Court has explained that "within the context of Section 57-12-6(B), goods are 'altered' if, as measured against the reasonable expectations of the consumer, the characteristics or value of the motor vehicle is affected in a meaningful way." *Hale*

4

*v. Basin Motor Co.*, 1990-NMSC-068, ¶ 10, 110 N.M. 314, 795 P.2d 1006. An affidavit is not required if the cost of relevant repairs is less than 6 percent of the sales price of the vehicle, Section 57-12-6(C), or in "a private-party sale of a vehicle" except on the purchasing party's request, Section 57-12-6(D).

{8}     Under Section 57-12-6, the undisputed material facts in the present case showed that an affidavit was required. The provided reports listed repairs that had been made to the vehicle. Defendant checked "Yes" on the inspection report next to the box with the following language: "Good Faith estimate whether discovered prior alteration/damage/repair cost exceeds 6% of sales price?" Under Section 57-12-6(B)(2), Plaintiff was entitled to, but did not, receive an affidavit from Defendant setting forth to be best of Defendant's knowledge "whether there ha[d] been an alteration or chassis repair due to wreck damage." As a result, Plaintiff established a prima facie case that Defendant willfully misrepresented the age or condition of the vehicle. *See* § 57-12-6(A).

{9}     The prima facie case, however, does not establish as a matter of law that Defendant violated Section 57-12-6(A). Defendant had the opportunity to rebut Plaintiff's prima facie case of willful misrepresentation with evidence in response to the motion for summary judgment. *See Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 9, 114 N.M. 228, 836 P.2d 1249 (explaining that in reviewing a grant of summary judgment "we look to whether [the] defendants made a prima facie case

5

that no genuine issue of material fact existed and, if so, whether plaintiffs rebutted the prima facie case." (alteration, internal quotation marks, and citation omitted)). Defendant, however, in the district court and more importantly on appeal, has maintained that an affidavit was not required under the circumstances of this case and not that Plaintiff's prima facie evidence of willful misrepresentation was rebutted by Defendant's evidence. Because the issue of whether an affidavit was required at all is the issue that Defendant preserved and raised on appeal, that is the issue we consider now, beginning with Defendant's first argument that satisfaction of certain regulations was sufficient to comply with Section 57-12-6 before turning to Defendant's second argument that Plaintiff did not establish that, measured against her reasonable expectations as a consumer, the repairs altered the vehicle in a meaningful way.

**A.     Section 57-12-6 and the Corresponding Regulations**

{10}     Defendant first argues that a notarized affidavit was not required based on the provisions of the related regulation, 12.2.14.8(B) NMAC, which provides that "[w]hen a seller in good faith: (1) conducts a motor vehicle inspection in compliance with 12.2.14.10 NMAC; (2) completes an inspection report pursuant to 12.2.14.11 NMAC; (3) provides the inspection report to the buyer; and (4) maintains the inspection report in seller's records for four years, the seller may be deemed to have complied with Section 57-12-6." Defendant maintains that no notarized affidavit

was required, because Plaintiff received the provided reports and those documents satisfied 12.2.14.8(B) NMAC, and as a result, Defendant should be "deemed to have complied with Section 57-12-6." *See* 12.2.14.8(B) NMAC. We evaluate Defendant's interpretation of 12.2.14.8(B) NMAC using "the same rules as used in statutory interpretation," and begin with the plain language of the regulation. *See Alliance Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2007-NMCA-157, ¶¶ 18-19, 143 N.M. 133, 173 P.3d 55; *see also T-N-T Taxi, Ltd. v. N.M. Pub. Reg. Comm'n*, 2006-NMSC-016, ¶ 5, 139 N.M. 550, 135 P.3d 814 ("Under the plain meaning rule, statutes are given effect as written without room for construction unless the language is doubtful, ambiguous, or adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious purpose.").

{11}   Defendant's interpretation of the plain language of 12.2.14.8(B) NMAC contradicts Section 57-12-6. According to Defendant, a seller may satisfy the requirements of Section 57-12-6 without an affidavit by complying with 12.2.14.8(B) NMAC. But under Section 57-12-6(A), the absence of an affidavit when disclosure is required is prima facie evidence of "the willful misrepresentation of the age or condition of a motor vehicle," the conduct that is prohibited by Section 57-12-6(A). The regulation cannot be read to contradict the statute. *See Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶ 23, 123 N.M. 362, 940 P.2d 468 ("When a

7

statute and a regulation conflict, the statute prevails."). Because the plain language of the regulation results in a contradiction of the statute, we construe 12.2.14.8(B) NMAC and the affidavit requirement, each "according to its obvious purpose," *see T-N-T Taxi, Ltd.*, 2006-NMSC-016, ¶ 5, as well as the other provisions of 12.2.14.8 NMAC, *see Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶¶ 30, 37, 147 N.M. 583, 227 P.3d 73 (interpreting the provisions of the UPA "liberally to facilitate and accomplish its purposes and intent" and considering the plain language "in the context of the statutory text as a whole" (internal quotation marks and citation omitted)).

{12}     The purpose of 12.2.14.8(B) NMAC is to provide a mechanism for dealers to perform an inspection of the vehicle in order to obtain sufficient information to evaluate the age and condition of the vehicle and to avoid the willful misrepresentation prohibited by Section 57-12-6(A). Section 57-12-6(B) sets out broad disclosure parameters and requires that an affidavit (1) describe the vehicle and (2) state "to the best of the seller's knowledge whether there has been an alteration or chassis repair due to wreck damage." But Section 57-12-6 neither defines "to the best of the seller's knowledge" nor outlines the seller's obligation to investigate the vehicle to determine if the circumstances require disclosure. Each of the numbered provisions of 12.2.14.8(B) NMAC relate to investigating the condition of the vehicle, and the numbered provisions fill in the gap left by the statute by

providing "clear legal standards as to what constitutes 'to the best of seller's knowledge' when selling used motor vehicles to retail buyers." *See* 12.2.14.6(A)(3) NMAC (quoting Section 57-12-6(B)(2) and setting out a purpose for the regulation).

{13}     The standards in 12.2.14.8(B) NMAC do not by themselves, however, fulfill the purpose of the affidavit requirement. The provisions of Section 57-12-6 require the affidavit in order to ensure that sellers disclose—and do not misrepresent—the age or condition of a vehicle and to provide evidence to that effect. *See* § 57-12-6(A) (defining the prohibited conduct). In the present case, Plaintiff and a dealership representative signed the damage disclosure statement, but that form was an acknowledgement by Plaintiff that the form was received and questions were answered. The seller made no representation or acknowledgement to Plaintiff. The inspection form was signed by an inspector but not the seller. Neither document is a statement from the seller—or is conclusive evidence—about whether "to the best of the seller's knowledge" the vehicle had sustained the relevant damage. *See* § 57-12-6(B); *cf.* Rule 1-056(E) (setting forth the requirements for an affidavit in support of summary judgment, which requires the witness's competency and personal knowledge of facts that "would be admissible in evidence"). The broader disclosure requirement of Section 57-12-6 "is intended to protect consumers from deceptive business practices that negate reasonable expectations." *See Hale*, 1990-NMSC-068, ¶ 10. The affidavit requirement serves that purpose by requiring the seller to attest

to certain knowledge about the vehicle, properly obtained by compliance with 12.2.14.8(B) NMAC.

{14} The remaining provisions of 12.2.14.8 NMAC demonstrate that the affidavit is required despite compliance with 12.2.14.8(B) NMAC. The entirety of 12.2.14.8 NMAC is titled "Affidavit Required." The premise of the regulation is set forth in 12.2.14.8(A) NMAC, which requires the seller to "furnish at the time of sale of a motor vehicle an affidavit that states to the best of the seller's knowledge whether there has been an alteration or chassis repair due to wreck damage, except where not required." As we have explained, 12.2.14.8(B) NMAC describes how the seller can obtain the necessary knowledge in good faith. Regulation 12.2.14.8(C) NMAC explains that "[w]hen a seller determines that an affidavit is required pursuant to Subsection B of Section 57-12-6 . . . , the seller shall attach a report which substantially complies with 12.2.14.11 NMAC to the affidavit to disclose the prior alteration or repair." 12.2.14.8(C) NMAC. Thus, even where an inspection report is provided in accordance with 12.2.14.8(B)NMAC, that report does not take the place of an affidavit but rather must be attached to the affidavit when the affidavit is also required. Similarly, 12.2.14.8(F) NMAC directs that when an affidavit is required, "a copy of the affidavit shall also be maintained by the seller for four years." This provision relates back to the requirement in 12.2.14.8(B)(4) NMAC that an inspection report be maintained in the seller's records for four years. If the inspection

10

report could substitute for the affidavit when an affidavit is required, as Defendant argues, there would be no need to separately account for affidavits to "also be maintained." *See* 12.2.14.8(F) NMAC. These additional provisions reinforce our conclusion that an affidavit is required, despite the broad "deemed to have complied" language contained in 12.2.14.8(B) NMAC.

**B.    Plaintiff's Reasonable Expectations**

{15}    Apart from 12.2.14.8(B) NMAC, Defendant argues that based on *Hale*, Plaintiff did not establish the requisite factual basis to require an affidavit. As we have noted, in *Hale*, our Supreme Court concluded that, under Section 57-12-6(B) a vehicle is "'altered' if, as measured against the reasonable expectations of the consumer, the characteristics or value of the motor vehicle is affected in a meaningful way." *Hale*, 1990-NMSC-068, ¶ 10. Defendant argues that no affidavit was required in the present case because Plaintiff did not show that the repairs itemized on the provided reports, when "measured against the reasonable expectations of Plaintiff as a consumer, altered the characteristics or value of the motor vehicle in a meaningful way." This argument disregards amendments to Section 57-12-6 since *Hale* was decided.

{16}    While the current Section 57-12-6(C) excuses an affidavit "if the flat rate manual cost of the alteration or chassis repair is less than six percent of the sales price of the vehicle," *see* § 57-12-6, that language was not included in the statute at

11

the time *Hale* was decided, *see* NMSA 1978, § 57-12-6 (1990). In that context, the *Hale* Court determined that "just any change" was not sufficient and that whether a vehicle was "altered" must be measured against the reasonable expectations of the consumer. 1990-NMSC-068, ¶ 10. In the year following the decision in *Hale*, however, the Legislature amended Section 57-12-6 to include limitations on the affidavit requirement arising from the cost of repairs or the "new" status of the vehicle. *See* NMSA 1978, § 57-12-6(C) (1991). The current statute correlates the disclosure requirement with the cost of "alteration or chassis repair" as it relates to a percentage of the sales price. Section 57-12-6(C). While *Hale* establishes a standard for evaluating the significance of alterations, Section 57-12-6(C) provides an alternate method to establish that a reasonable consumer would expect that alterations affected "the characteristics or value of the motor vehicle . . . in a meaningful way"—by showing that the cost of alterations equaled or exceeded 6 percent of the sales price of the vehicle. *See Hale*, 1990-NMSC-068, ¶ 10. In the present case, the inspection report affirmatively stated as much. Plaintiff therefore met the burden on summary judgment to establish that a reasonable consumer would expect that the alterations to the vehicle affected its characteristics or value in a meaningful way.

{17} For these reasons, we reject Defendant's arguments that an affidavit was not required and affirm the grant of partial summary judgment on the Section 57-12-6 claim.

## II. Judgment as a Matter of Law

{18} Defendant next argues that at the close of evidence at trial, under Rule 1-050 NMRA, the district court should have denied Plaintiff's motion for judgment as a matter of law and permitted the jury to decide the breach of contract counterclaim. Neither party designated the transcript of the argument on Plaintiff's motion. To assist our review, we are therefore left with only the district court's order granting the motion, Defendant's pleadings, the briefing on Defendant's motion to reconsider the ruling, and the parties' arguments on appeal. In that endeavor, we must—as must the district court—consider all of the evidence offered at trial and resolve conflicts in the evidence and draw reasonable inferences in favor of the party resisting the motion. *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 10, 106 N.M. 726, 749 P.2d 1105. But first, we set forth the factual basis for the counterclaim, the district court's written ruling, and Defendant's appellate arguments.

{19} In the amended counterclaim, Defendant maintained that Plaintiff breached the retail installment contract by not paying two additional installment payments after the vehicle was stolen. The district court concluded that the contract was

"mutually rescinded or avoided" because Defendant did not transfer title to Plaintiff, transferred title to itself after the vehicle was stolen, and received payment from Plaintiff's insurance company. As the district court further observed, Defendant's representative admitted at trial that Plaintiff "owed him nothing." Both in its motion to reconsider in the district court and on appeal, Defendant asserted that (1) the district court did not correctly weigh the evidence in favor of the nonmovant as required by Rule 1-050; and (2) the failure to transfer title did not breach the contract because Plaintiff was its owner when she drove the vehicle off the lot. On appeal, Defendant also argues that the retail installment contract provided that Plaintiff was responsible for attorney fees and costs "in the event of a default" and that those attorney fees and costs were the damages owed as a result of Plaintiff's breach. We begin with Defendant's final argument because we determine that the lack of evidence on damages resolves the issue on appeal. *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶¶ 26-27, 131 N.M. 607, 41 P.3d 333 (affirming a granted motion for judgment as a matter of law because "no evidence" supported an element of the claim and "the failure of any one of the elements will defeat the claim").

{20} Defendant points to no evidence presented at trial that demonstrates entitlement to an amount of attorney fees and costs as damages for breach of the retail installment contract. *See State ex rel. Nichols v. Safeco Ins. Co. of Am.*, 1983-

14

NMCA-112, ¶ 29, 100 N.M. 440, 671 P.2d 1151 ("In breach of contract suits where damages are sought for award of attorney[] fees under the contract, the party seeking the award must prove the claim for attorney[] fees with reasonable certainty in the same manner as other claimed damages."). Regarding fees, the installment contract states as follows:

> If you default, you agree to pay our court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. If we refer this Contract to an attorney who is not a salaried employee of ours, you agree to pay attorney's fees not exceeding 15 percent of the amount due and payable under the Contract, plus court costs.

On appeal, Defendant argues that the loan "payoff amount" at the time of the two missed payments was over $9,000, the retail installment contract fee provision allowed for 15 percent of the "amount due" plus costs, and that costs amounted to more than $12,000. The retail installment contract, however, directs that attorney fees would be a percentage of the "amount due and payable" on the contract.

{21}    At trial, Defendant's representative acknowledged that Plaintiff owed nothing for breach of contract because Plaintiff's insurance company had paid Defendant for the vehicle. As a result, no "amount due and payable" existed on which the jury could have calculated 15 percent for attorney fees. *See Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp.*, 1987-NMSC-045, ¶ 9, 106 N.M. 19, 738 P.2d 513 ("The purpose of allowing damages in a breach of contract case is the restoration to the injured of what he has lost by the breach, and what he

15

reasonably could have expected to gain if there had been no breach." (alteration, internal quotation marks, and citation omitted)). For support on costs, Defendant cites the cost bill that was filed posttrial but does not indicate that the jury received evidence on costs. For these reasons, we conclude that Defendant presented no evidence to the jury to support an award of attorney fees and costs as damages for breach of contract. *See Nichols*, 1983-NMCA-112, ¶ 29. We affirm the district court's grant of Plaintiff's motion for judgment as a matter of law and need not reach Plaintiff's remaining arguments related to this issue.

### III.   Attorney Fees and Costs

{22}   Defendant argues that the district court should have (1) granted its motion for attorney fees and costs under Section 57-12-10(C), which was based on the jury's verdict rejecting Plaintiff's Section 57-12-2 claim; (2) and denied Plaintiff's motion for attorney fees and costs, which was based on the grant of partial summary judgment on the Section 57-12-6 claim. "We review the award of attorney fees for abuse of discretion, but we review de novo whether" the district court based these decisions "on a misapprehension of the law." *Atherton v. Gopin*, 2012-NMCA-023, ¶ 5, 272 P.3d 700.

### A.   Defendant's Motion for Attorney Fees and Costs

{23}   "Under the UPA, a party who successfully defends against a UPA claim is entitled to an award of attorney fees if the district court finds that the party

complaining of such trade practice brought an action that was groundless." *Autovest, L.L.C. v. Agosto*, 2021-NMCA-053, ¶ 30, 497 P.3d 642 (emphasis, internal quotation marks, and citation omitted). Our Courts have long held that "to be entitled to such award, it is not enough to show that [the p]laintiff did not prevail on such claims." *Jones v. Beavers*, 1993-NMCA-100, ¶ 23, 116 N.M. 634, 866 P.2d 362. Instead, "[t]he party must also establish that, at the time such claim was filed, the claim was initiated in bad faith or there was no credible evidence to support it." *Id.* To evaluate whether Plaintiff's Section 57-12-2 claim was groundless, we consider the basis for the claim as set forth in Plaintiff's complaint.

{24} In the second amended complaint, Plaintiff alleged facts that implicated whether Defendant knew or should have known of prior damage to the vehicle but did not disclose the prior damage. *See* § 57-12-2(D) (defining "unfair or deceptive trade practices" in relevant part as "false or misleading oral or written statement[s] . . . of any kind knowingly made in connection with the sale . . . of goods"); *see also Robey v. Parnell*, 2017-NMCA-038, ¶ 48, 392 P.3d 642 ("Our Supreme Court has said that a 'knowingly made' statement is made when the party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." (internal quotation marks and citation omitted)). Plaintiff's claim as pleaded therefore was grounded in both facts and law—facts related to prior damage

and law related to knowledge. Defendant does not argue that at the time the second amended complaint was filed, no evidence existed to establish prior damage but instead contends that Defendant had no way of knowing about any prior damage. Any dispute about Defendant's knowledge was subject to proof at trial but does not demonstrate that the claim was groundless from its initiation. *See Atherton v. Gopin*, 2015-NMCA-003, ¶ 47, 340 P.3d 630 ("Our case law makes clear that 'knowingly made' is an integral part of all UPA claims and that it must be the subject of actual proof." (citation omitted)). Defendant makes no attempt to otherwise demonstrate that the claim was brought in bad faith. *See Autovest, L.L.C.*, 2021-NMCA-053, ¶ 32. The district court therefore properly determined that Plaintiff's claim was not groundless and denied Defendant's motion for attorney fees under Section 57-12-10(C).

**B.      Plaintiff's Motion for Attorney Fees and Costs**

{25}      Defendant makes two challenges to the district court's award of attorney fees and costs to Plaintiff. Defendant contends that (1) Plaintiff was not entitled to attorney fees under Section 57-12-10 because the district court made no finding of willfulness in granting partial summary judgment to Plaintiff on the Section 57-12-6 claim; and (2) Plaintiff did not establish that the attorney fees awarded related only to the successful UPA claim. To understand Defendant's first argument we briefly return to the record.

{26} In the motion for partial summary judgment related to Section 57-12-6, Plaintiff sought "summary judgment as to liability under the UPA" and observed that "UPA damages and whether the violation was willful, as that term is defined under the UPA, will be issues dealt with at the trial." Plaintiff's observation related to a portion of the UPA "[p]rivate remedies" provision, which permits "three times actual damages or three hundred dollars" if the trier of fact finds that a UPA violation was willful. *See* § 57-12-10(B). Before trial, Plaintiff waived the opportunity to obtain a jury finding on "willfulness" in relation to Section 57-12-6 but reserved that opportunity in relation to the separate Section 57-12-2 claim. After the defense verdict on the Section 57-12-2 claim, Defendant argued that because Plaintiff waived a finding of willfulness in relation to Section 57-12-6, Plaintiff was not entitled to fees under Section 57-12-10. On appeal, Defendant's argument is framed as follows: Section 57-12-6 makes *willful* misrepresentation an unfair trade practice, the district court made no willfulness finding in relation to Section 57-12-6, and Plaintiff abandoned a willfulness finding from the jury. Therefore, Defendant maintains that Plaintiff did not establish a violation of the UPA that would result in an entitlement to fees under Section 57-12-10(C). The record, however, does not support Defendant's view.

{27} Defendant's argument hinges on the lack of willfulness finding by the district court on partial summary judgment and the pretrial waiver of a jury determination

19

of willfulness. As we have explained, however, Defendant's failure to provide an affidavit established a prima facie case for willful misrepresentation under Section 57-12-6(A), which Defendant did not rebut. The district court granted summary judgment on Plaintiff's claim that Defendant violated Section 57-12-6, which necessarily means that Defendant willfully misrepresented the age or condition of the vehicle. The partial summary judgment ruling therefore established that Plaintiff was the prevailing party for the purposes of attorney fees under Section 57-12-10(C). Plaintiff's pretrial waiver of a jury finding on willfulness, in context, did not unravel the district court's determination that Defendant violated Section 57-12-6. The district court explained Plaintiff's position as follows: Plaintiff's "intent to pursue a trebling of damages . . . for willfulness that under Section 57-12-6 at least—that will not be—that will be abandoned or withdrawn, but that if there's anything under [Section] 57-12-2, that will be pursued." Plaintiff therefore waived the opportunity to have the jury find willfulness under Section 57-12-10(B), for the purposes of trebling damages in relation to Section 57-12-6, but not for the purposes of liability under Section 57-12-6. For these reasons, Plaintiff's award of attorney fees was justified under Section 57-12-10(C).

{28} Defendant additionally challenges the amount of attorney fees awarded to Plaintiff and argues that the attorney fee award was erroneous because Plaintiff failed to separate time counsel spent on the successful UPA claim from time spent

20

on other matters. *See Dean v. Brizuela*, 2010-NMCA-076, ¶ 17, 148 N.M. 548, 238 P.3d 917 (explaining that generally, recoverable fees under the UPA must be separated from nonrecoverable fees "to ensure that only those fees for which there is authority to award attorney fees are in fact awarded"). After a party makes a claim for attorney fees, it is left "to the discretion of the [district] court to make the award based upon [the p]laintiffs' proof of the reasonableness of the fees." *Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 41, 132 N.M. 459, 50 P.3d 554. On the record before us, we discern no abuse of discretion.

{29}     The district court's findings support a conclusion that Plaintiff offered proof of the reasonableness of the fees requested. The district court found in relevant part that

> 5.     Plaintiff properly distinguished and excluded fees and costs that were not inextricably intertwined with Plaintiff's [UPA] claim that she prevailed on. *See* Plaintiff's Reply, filed 11/22/2021.

> 6.     The remaining fees and costs sought by Plaintiff are inextricably intertwined with her [UPA] claim that she prevailed on.

> 7.     In an exercise of further billing discretion, Plaintiff has agreed to reduce her attorney's lodestar by 10%.

The district court reviewed Plaintiff's original and amended attorney fee requests, which were supported by affidavits and billing records, as well as Defendant's objections and heard argument from counsel. As this Court has observed, the district court, "intimately familiar with the nuances of the case, is in a far better position to

21

make such decisions than is an appellate court, which must work from a cold record." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 14, 140 N.M. 879, 149 P.3d 976 (alteration, internal quotation marks, and citation omitted). Generally, "[t]his court is not inclined to second-guess the [district court] in [its] determination as to the reasonableness of an award of attorney[] fees unless there is a lack of evidentiary basis for the court's determination or unless the court has been shown to have clearly abused its discretion." *Schall v. Schall*, 1982-NMCA-045, ¶ 40, 97 N.M. 665, 642 P.2d 1124. In the present case, the district court was apprised of the law and facts and ruled that Plaintiff sufficiently separated or accounted for attorney fees unrelated to the grant of partial summary judgment on the Section 57-12-6 claim. We therefore conclude that the attorney fee award was not an abuse of discretion. *See Jaramillo*, 2002-NMCA-072, ¶ 41.

## IV.     Malicious Abuse of Process

{30}     Defendant last argues that the district court wrongly dismissed the malicious abuse of process counterclaim, because sufficient facts were pleaded to put Plaintiff on notice of the claim. "A motion to dismiss tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *N.M. Pub. Regul. Comm'n v. New Mexican, Inc.*, __-NMSC-__, ¶ 17, __ P.3d __ (S-1-SC-39602, Aug. 29, 2024) (omission, internal quotation marks, and citation omitted). Based on the factual

22

allegations in the counterclaim, Defendant's malicious abuse of process claim appears to arise from an allegation that Plaintiff lacked probable cause to file the complaint. *See Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19 (defining as an element of a malicious abuse of process claim the "irregular or improper" use of process, which can include filing a complaint without probable cause). In order "[t]o prove that a lawsuit lacks probable cause, a claimant must show that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim." *LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 31, 282 P.3d 758 (internal quotation marks and citation omitted). To avoid discouraging "the fundamental right of access to the courts, the lack of probable cause must be manifest." *Id.* (internal quotation marks and citations omitted).

{31}     Any lack of probable cause to file the complaint in the present case was not "manifest." *See id.* In the amended complaint, Plaintiff alleged that the inspection form indicated that the cost of repairs exceeded 6 percent of the sales price for the vehicle and that Defendant provided no affidavit. In the answer and counterclaim, Defendant did not deny the contents of the inspection report, nor did Defendant allege either that the cost of repairs was less than 6 percent or that an affidavit was provided. The counterclaim therefore did not establish that Plaintiff had no factual basis for the Section 57-12-6 claim. As we have explained, the failure to provide an affidavit in the factual circumstances that were alleged is prima facie evidence that

23

the dealer willfully misrepresented the age or condition of the vehicle. *See* § 57-12-6(A). Defendant's counterclaim alleged disagreement with this legal basis, but did not show that Plaintiff had no "reasonable belief in the validity of the allegations of fact or law" underlying the claim. *See LensCrafters, Inc.*, 2012-NMSC-020, ¶ 31 (internal quotation marks and citation omitted). For these reasons, a lack of probable cause was not "manifest" in the complaint, and Defendant's counterclaim for malicious abuse of process was legally insufficient and properly dismissed. *See id.*

**CONCLUSION**

{32}     We affirm.

{33}     **IT IS SO ORDERED.**


_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**SHAMMARA H. HENDERSON, Judge**


_____
**JANE B. YOHALEM, Judge**

24